# IN the INTEREST OF A.B., a child under the age of eighteen: A.B., by her Guardian ad Litem, Attorney Shelia Hill-Roberts, Appellant,

## v.

## P.B., mother, and M.W.K., father, Respondents.

### Court of Appeals

*No. 88-1494. Submitted on briefs January 13, 1989.—Decided June 8, 1989.*

(Also reported in 444 N.W.2d 415.)

For the appellant the cause was submitted on the briefs of *Legal Aid Society of Milwaukee, Inc.,* with *Shelia Hill-Roberts* of counsel, of Milwaukee.

For the respondent P.B. the cause was submitted on the briefs of *Demet & Demet, S.C.,* with *Margadette M. Demet* of counsel, of Milwaukee.

An amicus curiae brief was submitted by *Donald J. Hanaway,* attorney general, and *Donald P. Johns,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. This case concerns a biological father who sought to terminate his parental rights. Following a hearing, the trial court granted his request, and the child's guardian ad litem appeals.[1] The Attorney General has submitted an *amicus curiae* brief urging reversal.

The guardian ad litem raises three issues. First, she alleges that the trial court failed to consider the statutory factors applicable to situations where a parent wishes to terminate his or her parental rights. Second, she argues that the Children's Code does not permit a parent to terminate parental rights in order to avoid child support responsibilities. Third, she contends that it is against public policy to permit the voluntary termination of parental rights when that is not a prelude to adoption.[2] We reverse.

---

[1] A guardian ad litem is a lawyer appointed to represent the "interest of the child" in Children's Code matters, sec. 48.02(9), Stats. Either counsel or a guardian ad litem must be appointed for a child who is the subject of a termination of parental rights proceeding. Sec. 48.23(1)(d), Stats.

[2] The petition seeking termination of the father's parental rights was filed by the mother. *See* sec. 48.42(1), Stats. On appeal, she argues that none of these issues were "explicitly raised" before the trial court and that, therefore, we should not consider them. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443–444, 287 N.W.2d 140, 145–146 (1980). We disagree. The appellate record indicates that

## I.

A.B. is a girl who was born on May 6, 1986, when her mother was thirty-two and her father was twenty-six. The parents were not married and had dated for several months when the mother told the father that she was pregnant. He suggested that they marry, but she demurred. The father then advised an abortion.

The father initially denied paternity but, after blood testing, *see* secs. 767.48 and 885.23, Stats., apparently admitted it. He was adjudicated as the girl's father and was ordered to pay $435 per month in child support. The mother testified at the hearing that of that amount, $150 "goes to the state to pay back."

On January 22, 1988, the mother filed a petition to terminate the father's parental rights to their daughter. The petition alleged that the father agreed to the termination and that the mother "will waive all of her rights to any child support from the adjudicated father now or at any time in the future and will assume complete financial responsibility for the child." The petition represented, however, that the father "will continue to pay on the balance due the welfare department until the obligation has been satisfied."

The trial court held a hearing on the petition. Both the mother and the father testified. They were represented by attorneys, though the father's attorney did not attend the hearing. The child was represented by her guardian ad litem.

At the hearing, the mother explained why she wanted the father's parental rights terminated. First, she testified that the father had limited contact with the child since her birth, visiting with her only two or three

---

the child's guardian ad litem raised each of these issues before the trial court.

times. She noted that the father had wanted more frequent visits, but was rebuffed because she did not "feel it's in the best interest of my daughter."

Second, the mother testified that she had found a photograph while rummaging through a box of pictures and "[w]hen I asked him what it was, he explained that he was masturbating, and he had ejaculated on his face." The appellate record does not reveal when the photograph was taken except that it antedated the child's birth.

The mother testified that the photograph incident gave her pause: "Well, the more I thought about it the more I realized I didn't know about him, and I thought if he was capable of a photograph like that, I have no idea what else he's capable of." She did testify, however, that all of the father's visits with the child, which she supervised, were uneventful. When asked why she "would want to monitor or deny him visits," the mother responded: "Well, I don't think he's had any experience with children, and I don't want to use my daughter as a guinea pig."

The father agreed that his parental rights to the girl should be terminated. He explained at the hearing that he had not established "any kind of relationship" with his daughter and thought that termination was in her best interest. When asked why he thought it was in her best interest, he explained:

> I think that [the mother] is a very capable mother, and under the circumstances I do not wish to put that child in the middle between her and I [sic]. There has been no relationship between [the mother] and I [sic], and I don't want to make that child a pawn. I was raised under a single parent, and there was a great deal of frustration when the mother and

316

father were involved for me personally, and I do not want to do this to that child.

He further explained that he believed "it's possible that both of us could have a negative influence on that child." He recognized that if his rights were terminated, he would be relieved of his child support obligations, but asserted that he thought the elimination of that source of income would also be in her best interest.

At the time of the hearing, the mother was employed, earning approximately $20,000 per year. The father was also employed, but his earnings are not of record.[3]

In response to questioning by the trial court, the father confirmed that he wanted to terminate his parental rights and that he understood all of the consequences. There is no indication in the appellate record, however, that he considered any alternatives to termination.

The trial court found that the father's consent to termination was voluntary and granted the petition. After considering the two factors it believed weighed against termination, truncation of the father's support obligations to the child and the fact that termination would leave the child with one parent, the trial court concluded that termination was, nevertheless, in the child's best interests. It explained its rationale in an oral decision:

> The child is almost two years old, and I think to continue the uncertainty that exists now into the future; that is, the uncertainty about his role by con-

---

[3] The guardian ad litem's brief represents that the father was earning $33,000 per year. We may not consider that representation, however, since it is not based on anything in the appellate record. *See Keplin v. Hardware Mut. Casualty Co.*, 24 Wis. 2d 319, 326, 129 N.W.2d 321, 324 (1964).

tinuing his legal status without any likelihood that he will act on it in any way or assert any relationship or interest in the child is perhaps most particularly a hardship on the mother, but inevitably that creates a hardship on the child because of the uncertainty that the mother will have in dealing with this situation, and as the child becomes old enough the inquired [*sic*] uncertainty the child will encounter in terms of who this person is and what his rights are, and I just don't see that as a very healthy situation.

In its written order, the trial court found "[t]hat there is no likelihood that in the future the father will act to assert any relationship or interest in the child and this creates a situation of uncertainty both for the mother and the child . . .." The trial court also found the father was not "a fit parent within the meaning of the Wisconsin Statutes."

## II.

Voluntary termination of parental rights is governed by statute. Section 48.41, Stats., grants a trial court discretion to terminate the parental rights of a consenting parent as long as the following prerequisites are met. First, the consent to termination must be informed and voluntary. Sec. 48.41(2)(a) and (b), Stats. Second, the trial court must consider the criteria set forth in sec. 48.426, Stats.[4]

---

[4]Section 48.41(1), Stats., provides:

The court may terminate the parental rights of a parent after the parent has given his or her consent as specified in this section. When such voluntary consent is given as provided in this section, the judge may proceed immediately to a disposition of the matter after considering the standard and factors specified in s. 48.426.

## A.

Given the consequences and finality of an order terminating parental rights, *see* sec. 48.43(2), Stats., a trial court's inquiry into the various factors that comprise the mosaic of voluntariness must be searching and penetrating. *See In re D.L.S.,* 112 Wis. 2d 180, 195–197, 332 N.W.2d 293, 301–302 (1983); sec. 48.422(3) and (7), Stats.

In determining whether a parent has voluntarily consented to the termination of his or her parental rights, the trial court must analyze the parent's education and comprehension, whether there were any threats or inducements, the extent to which the consequences of termination are understood, and the like. *D.L.S.,* 112 Wis. 2d at 196–197, 332 N.W.2d at 301–302. The trial court must also be satisfied that the parent has "full knowledge of his or her alternatives" to termination because that "is a particularly important ingredient" to the voluntariness determination. *Id.* at 192, 332 N.W.2d at 300. As we have seen, there is nothing in the appellate record that indicates that the father was aware of alternatives to termination—alternatives that might have alleviated the concerns he expressed about his daughter's welfare. Accordingly, the trial court's determination that the father's consent to the termination of his parental rights was voluntary cannot stand. *See id.* at 196–197, 332 N.W.2d at 302.

## B.

Once a trial court is satisfied that the consent is voluntary, the trial court moves on to the "disposition"

stage and decides, upon the evidence, whether termination is warranted. *See* secs. 48.41(1), 48.422(3), and 48.427(1), Stats. The trial court may then either enter an order terminating parental rights, if the evidence supports termination, or dismiss the petition if the evidence does not. Sec. 48.427, Stats. In making that decision, the trial court must give "paramount consideration" to the child's best interests, sec. 48.01(2), Stats., which also constitute the "prevailing factor." Sec. 48.426(2), Stats.[5] Although we have determined that this case must be reversed because the voluntariness analysis required by *D.L.S.* was not made, we discuss the "best interests" considerations of the second phase in order to provide guidance should the termination petition be refiled, since those considerations have been briefed and are presented by the appellate record. *See State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963).

Section 48.426(3), Stats., requires the trial court to consider the following in ascertaining the child's best interests:

---

[5]Section 48.01(2), Stats., provides:

This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.

Section 48.426(2), Stats., provides:

Standard. The best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings under this subchapter.

Factors. In considering the best interests of the child under this section the court shall consider but not be limited to the following:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

An analysis of what is in a child's best interests presents "a mixed question of law and fact with the precise determination of such criteria as psychological factors being questions of fact." *In re Adoption of R.P.R.*, 98 Wis. 2d 613, 618, 297 N.W.2d 833, 836 (1980). The trial court's "factual determinations will not be reversed unless 'against the great weight and clear preponderance of the evidence.'" *Id.* at 618-619, 297 N.W.2d at 836 (citation omitted).

As the guardian ad litem pointed out in her brief, the trial court's rationale in granting termination focused on difficulties the parents were having in coping

with their strained relationship and the mother's desire to get the father out of her life. The trial court also recognized that termination of the father's parental rights would also terminate his obligation to support his daughter.

Parental rights may not be terminated merely to advance the parents' convenience and interests, either emotional or financial. *See Ex parte Brooks,* 513 So. 2d 614, 616-617 (Ala. 1987); *In re D.W.K.,* 365 N.W.2d 32 (Iowa 1985); *In re K.J.K.,* 396 N.W.2d 370 (Iowa Ct. App. 1986); *In re Welfare of Alle,* 230 N.W.2d 574 (Minn. 1975); *In re B.L.G.,* 731 S.W.2d 492, 498-499 (Mo. Ct. App. 1987). Furthermore, alternatives to termination must be explored. *See Brooks,* 513 So. 2d at 617. Only if termination is still in the child's best interests, after consideration but rejection of these alternatives, is termination permitted. *See* sec. 48.426, Stats. Simply put, no parent may blithely walk away from his or her parental responsibilities.

This case is not one where termination would advance the prospects of a proposed adoption and a child's resulting passage from instability to stability. *See* secs. 48.01(1)(g), (gg), (gr) and 48.426(3)(a), (f), Stats. While the vicissitudes of life place many children in one-parent circumstances, it is generally better for children to have two parents. Termination of the father's parental rights here would cut an actual financial support line for his daughter and would sever the potential for future emotional succor. *See In re C.E.W.,* 124 Wis. 2d 47, 65, 368 N.W.2d 47, 56 (1985). There is no showing that the parents' relationship adversely affects their daughter to the extent that termination is warranted—or that it threatens to do so. Additionally, alternatives to termina-

tion were apparently not even discussed, much less explored. As the State points out in its brief, "[t]ermination of parental rights is also termination of the child's rights." On the appellate record here, that is not in her best interests.[6]

[6]Although the photograph incident is disturbing, it—standing alone and in the context of this case—is not sufficient to support the trial court's conclusion that the father was an unfit parent at the time of the hearing, *see In re J.L.W.,* 102 Wis. 2d 118, 135–140, 306 N.W.2d 46, 54 (1981), or to warrant the drastic consequences of termination. In light of our resolution of this appeal, and because the issue was not briefed, it is not appropriate to decide whether unfitness is a prerequisite to a voluntary termination of parental rights as it is when an involuntary termination is sought and the parent has established a "substantial parental relationship with the child." *In re Baby Girl K.,* 113 Wis. 2d 429, 442–448, 335 N.W.2d 846, 853–856 (1983), *appeal dismissed,* 465 U.S. 1016 (1984). *Cf. Coffey,* 18 Wis. 2d at 533, 118 N.W.2d at 942 (issues that are presented by the record and are briefed may be decided by appellate court even though another issue is dispositive if those issues are likely to be reasserted on remand).