JAN COHEN ET AL. *v.* SECURITY TITLE AND
GUARANTY COMPANY
(13662)

PETERS, C. J., HEALEY, CALLAHAN, COVELLO and HULL, Js.

Argued May 4—decision released August 8, 1989

*Benson A. Snaider,* with whom, on the brief, was
*Britta Schneider,* for the appellants (plaintiff Stephen
Harney et al.).

*Jeffrey J. Mirman,* with whom was *Peter Schwartz,*
for the appellee (defendant).

COVELLO, J. The plaintiffs[1] brought this action to the
Superior Court to recover for damages allegedly sus-

---

[1] The plaintiffs at the trial were five partners, Jan Cohen, Arnold Foster, Mario DiRenzo, Stephen Harney and Robert Errato. Only two of the

tained when the defendant, Security Title and Guaranty Company, denied their claim for loss under its title insurance policy. The trial court, *Hodgson, J.,* concluded that the plaintiffs did not suffer any loss within the meaning of the policy and consequently found in favor of the defendant. The plaintiffs appealed to the Appellate Court from the trial court's judgment and we thereafter transferred the case to ourselves pursuant to Practice Book § 4023.

The trial court found the following: On March 21, 1986, Harbor View Associates (Harbor View) entered into a contract of sale whereby they agreed to sell certain real property, known as Colonial Quadrangle, to the plaintiffs for $4,350,000. The property consisted of seventy-eight dwelling units at two locations. The seventy-eight units consisted of fifty-four units in attached townhouses on Riverside Drive in Clinton, twenty-one units in attached townhouses at 114-116 Commerce Street in Clinton, and three units in a three-family house also at the 114-116 Commerce Street location.

The day before the closing, the plaintiffs discovered that the legal description contained in the contract of sale, and in the proposed deed, included more property

plaintiffs, Errato and Harney, have appealed from the trial court decision. On August 11, 1988, the defendant moved to dismiss this appeal for lack of jurisdiction due to the absence in the appeal of indispensable parties. On November 3, 1988, the Appellate Court denied this motion. The defendant now "renews its request that the Court dismiss the appeal because it lacks jurisdiction." The defendant did not actually brief this claim but relies on the reasoning in its original motion. Because the defendant has failed to brief this issue adequately we will not consider it here. " ' "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. *Cheney* v. *Strasburger,* 168 Conn. 135, 142, 357 A.2d 905 (1975); Maltbie, Conn. App. Proc. § 327; see *Hartford National Bank & Trust Co.* v. *Tucker,* 178 Conn. 472, 475, 423 A.2d 141 (1979)." ' " *Aillon* v. *Meachum,* 211 Conn. 352, 356 n.4, 559 A.2d 206 (1989).

than the plaintiffs had intended to buy and the sellers had intended to sell. In addition to the condominium complex, the property as described contained a house lot and a single family dwelling not owned by the sellers that were located in the southwest corner of the rectangular property set out in the description (Carelli parcel).

At the closing on April 29, 1986, neither the plaintiffs nor their attorney mentioned the discovery of the inclusion of the Carelli parcel. Harbor View supplied the plaintiffs with a warranty deed that contained the same description of the property as appeared in the contract of sale.

By letter dated June 6, 1986, the plaintiffs notified the defendant that title to a portion of the property that it had insured was in fact held by Richard and Anita Carelli. The plaintiffs demanded "reimbursement for the loss of the said premises." The defendant denied the claim.

The plaintiffs brought this action to the Superior Court. The plaintiffs' amended complaint alleged: (1) a breach of contract; (2) a breach of an implied covenant of good faith; and (3) violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42a-110a et seq. The trial court found that the plaintiffs had failed to prove a loss, that they had suffered or agreed to accept a defective deed and that the title insurance policy should be reformed. The court further found that the defendant had not violated either CUTPA or the implied covenant of good faith.

The plaintiffs claim on appeal that the trial court erred in concluding (1) that they suffered no loss within the meaning of the title insurance policy, and (2) that they agreed to accept a defective deed from the sellers.

We review these claims under the "clearly erroneous" standard enunciated in Practice Book § 4061 and find no error. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The plaintiffs' first claim is that the trial court erred in finding that they had suffered no loss or damage compensable under the insurance policy. The plaintiffs argue that a loss occurred when they failed to receive what had been promised to them in the contract of sale and what was warranted to have been conveyed to them by warranty deed, i.e., the Carelli property. We disagree.

The insurance policy issued to the plaintiffs excluded from coverage "[d]efects, liens, encumbrances, adverse claims, or other matters . . . *resulting in no loss or damage to the insured claimant.*" (Emphasis added.) This exclusion reflects the fact that "[t]itle insurance is . . . an indemnity contract and as such it is to provide reimbursement for *actual* loss only. (*Empire Development Co.* v. *Title Guarantee & Trust Co.,* 225 N.Y. 53 [121 N.E. 468 (1918)]; 15 Couch, Insurance [2d Ed.], § 57:179.)" (Emphasis added.) *Grunberger* v. *Iseson,* 75 App. Div. 2d 329, 331, 429 N.Y.S.2d 209 (1980). The plaintiffs suffered no loss or damage in this case.

As the trial court found, this is not a situation in which the plaintiffs received less property than they had intended to buy. The plaintiffs never considered the Carelli parcel to be included in the sale, they would have paid the same amount regardless of whether the Carelli property was included in the sale and they offered no evidence to suggest that the property actually sold to them had a value of less than the purchase price of $4,350,000. The plaintiffs received exactly what they had bargained for, i.e., seventy-eight dwelling units on two parcels of land for a price of $4,350,000.

These facts found by the trial court were amply supported by the record. Therefore, the trial court was correct in concluding that the plaintiffs had suffered no compensable loss under the policy. See *Malkin* v. *Realty Title Ins. Co.*, 244 Md. 112, 223 A.2d 155 (1966) (where purchasers understood that public road occupied part of property and elected to complete sale, purchasers cannot recover for loss); *Aja* v. *Appleton*, 86 Nev. 639, 472 P.2d 524 (1970) (where purchasers concede that they never intended to purchase parcel of land inadvertently described in deed, purchasers suffered no compensable loss).

The plaintiffs next claim that the trial court erred in concluding that the plaintiffs either suffered or agreed to receive a defective deed. They argue that they did not bring about or cause the circumstances that gave rise to the defect nor did they agree to or assume the defect. We disagree.

The insurance policy contains an exclusion for "[d]efects, liens, encumbrances, adverse claims, or other matters . . . *created, suffered, assumed or agreed to by the insured claimant.*" (Emphasis added.) Other courts have considered similar clauses and have held that this type of clause insulates the insurer from liability where the alleged loss resulted from the insured's own intentional misconduct or inequitable dealings. See *Taussig* v. *Chicago Title & Trust Co.*, 171 F.2d 553 (7th Cir. 1948); *Conway* v. *Title Ins. Co.*, 291 Ala. 76, 277 So. 2d 890 (1973); *Brick Realty Corporation* v. *Title Guarantee & Trust Co.* 161 Misc. 296, 291 N.Y.S. 637 (1936). By failing timely to raise the issue of the discrepancy between the piece of land they intended to buy and the piece of land they in fact bought, the plaintiffs agreed to receive a defective deed.

The plaintiffs were well aware of the discrepancy between the two descriptions. Although they could have

timely brought this problem to the attention of the sellers, they did not do so. The plaintiffs cannot now complain of the defect to which they acquiesced at closing. We agree with the trial court that this policy exclusion precludes the plaintiffs from recovering damages since they agreed to the defect of which they now complain.

There is no error.

In this opinion the other justices concurred.