# In re Bruce R. et al.*
## (14943)

Peters, C. J., and Callahan, Berdon, Norcott and Katz, Js.

Argued February 10—decision released July 11, 1995

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

*William F. Gallagher,* with whom, on the brief, were *Cynthia C. Bott* and *Edward Giacci,* for the appellant (petitioner father).

*Sean Orion LeBas,* for the appellee (respondent mother).

*JoNel Newman* filed a brief for the Connecticut Civil Liberties Union as amicus curiae.

NORCOTT, J. The principal issue in this certified appeal is whether the trial court properly granted the petitioner father's petitions[1] to terminate his parental rights pursuant to General Statutes § 45a-715 et seq. without first considering his financial condition and the financial condition of his children's custodial parent. The trial court granted the petitions to terminate his parental rights pursuant to General Statutes § 45a-717 (f).[2] The respondent mother, who has sole

---

[1] The petitioner filed a petition to terminate his parental rights with respect to each of his minor children, Bruce R. and Jodi R.

[2] General Statutes § 45a-717 (f) provides: "At the adjourned hearing or at the initial hearing where no investigation and report has been requested, the court may approve the petition terminating the parental rights and may appoint a guardian of the person of the child, or if the petitioner requests, the court may appoint a statutory parent, if it finds, upon clear and convincing evidence that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time which, except as provided in subsection (g) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare

custody of the children, appealed from that judgment to the Appellate Court, which reversed the judgment of the trial court, concluding that § 45a-717 (f) required that the trial court consider the financial condition of the parents, including the parent who is seeking to terminate his or her parental rights, as a factor in determining the best interest of the children.[3] *In re Bruce R.*, 34 Conn. App. 176, 640 A.2d 643 (1994). Thereafter, we granted certification to appeal, limited to the following issue: "In the circumstances of this case, was the financial condition of the natural parents a required consideration in determining whether termination of parental rights was in the best interests of the children?" *In re Bruce R.*, 230 Conn. 902, 644 A.2d 915 (1994). We affirm the judgment of the Appellate Court.

The Appellate Court in its opinion narrated the following undisputed facts. "During the petitioner's mar-

---

of the child; or (2) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (3) there is no ongoing parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child." See also General Statutes § 17a-112 (b) (similar criteria and procedure for terminating parental rights of children committed to commissioner of children and families).

[3] At oral argument before this court, the petitioner conceded that the trial court made no specific finding that it had considered the financial condition of the parents. Indeed, the only references in the record to the finances of the parents were: (1) the investigative report prepared by the Community Children and Family Services; (2) two brief colloquies during the hearing before the trial court that touched upon the respondent's financial condition; and (3) the trial court's pretrial denial of the respondent's motion for the exchange of financial affidavits.

riage to the respondent, they had two children issue of the marriage, a son born June 18, 1980, and a daughter, born December 2, 1987. On March 25, 1988, their marriage was dissolved by the Superior Court. In the decree of dissolution, the respondent was granted custody of the two minor children and the petitioner was granted liberal rights of visitation. The decree further ordered the petitioner to pay $75 per week for the support of each minor child, [to] maintain medical and life insurance for their benefit, and to pay one-half of all their unreimbursed medical expenses. After the dissolution, problems arose between the petitioner and respondent that affected the petitioner's rights of visitation.

"On May 14, 1991, the petitioner filed petitions in the Court of Probate for the district of Derby seeking to terminate his parental rights with respect to both children. Both petitions alleged the following reasons for seeking such termination of parental rights: 'Since the date of dissolution, the children have been used as pawns. I have been denied visitation when requested. Allegations have been raised that I am not a fit father which led the Superior Court to enter supervised visitation. Since that order, additional problems with visitation have arisen which are now affecting the well-being of the children. In mid-winter 1990/1991, Respondent, mother of the minor [children], suggested that in the best interest of the children, that I consent to termination of my parental rights. After careful consideration and thought and after reviewing the inability of Respondent and me to discuss any difficulties that we have, including important matters in the [children's lives], it is clear that I agree with her contention that my parental rights be terminated. The [children's] well-being is affected adversely by the difficulties between Respondent and me which I do not believe can be cured through counseling. It is further clear that the ultimate

best interest of the children will be served by the termination of my parental rights to allow Respondent to live her life without any concern for me or of me and thereby ease the pressure on the [children] emotionally.' Along with the petitions seeking to terminate parental rights, the petitioner executed and filed the consent form required by General Statutes § 45a-715 (d).[4] The Court of Probate appointed an attorney for the children and ordered the department of children and youth services (DCYS)[5] to make an investigation and subsequent written report regarding the proposed termination. [See General Statutes § 45a-717 (e).] DCYS contracted with a private agency, Community Children and Family Services, to conduct the investigation and that private agency thereafter submitted a written report to the Court of Probate. The report was based on the information gathered from interviews with the petitioner, the respondent, and both children. The report recommended that the petitions for termination of parental rights be denied on the ground that 'it does not seem to bear that inability to get along with his ex-wife relieves [the petitioner] from responsibility for providing for his children.'

"On motion of the respondent, the petitions for termination of parental rights were ordered transferred from the Court of Probate to the Superior Court, Juvenile Matters, pursuant to General Statutes § 45a-715 (g). On July 7, 1992, the attorney for the children requested that the court issue an order to obtain updated evalu-

---

[4] "General Statutes § 45a-715 (d) provides in pertinent part: '[E]ach consenting parent shall acknowledge such consent on a form promulgated by the office of the chief court administrator evidencing to the satisfaction of the court that the parent has voluntarily and knowingly consented to the termination of his parental rights. . . .' " *In re Bruce R.*, supra, 34 Conn. App. 179 n.1.

[5] "The department of children and youth services has since been renamed the department of children and families. Public Acts 1993, No. 93-91, § 1." *In re Bruce R.*, supra, 34 Conn. App. 179 n.2.

ations of the petitioner, the respondent, and the minor children. By agreement of all counsel, Ralph S. Welsh was appointed to conduct these evaluations. The evaluations were conducted on December 8 and 29, 1992, and written reports were submitted to the trial court. The trial court conducted a hearing regarding the termination of the petitioner's parental rights on May 21 and 24, 1993. The petitioner, the respondent, Welsh, and the son's therapist, Annette Bonomo, testified at the hearing. The trial court granted the petitions to terminate the petitioner's parental rights on May 24, 1993." *In re Bruce R.*, supra, 34 Conn. App. 178–80.

The respondent mother, who contested the termination of the petitioner's parental rights in the trial court, appealed. The Appellate Court reversed the judgment of the trial court, concluding that when the parent whose rights are being terminated consents to the termination, General Statutes § 45a-715 et seq. "requires that the trial court consider, as one of the elements necessary to make the determination of what is in the best interests of the children, the financial condition of the natural parents." Id., 184–85. The Appellate Court stressed: "We do not hold, nor do we imply, that the financial conditions of the parents may alone determine the best interests of a child. We do hold that the trial court must be adequately apprised of such financial condition, must give it due consideration, and must accord it as much weight in its decision as the trial court in its discretion deems appropriate in light of all the other facts and circumstances surrounding the proposed termination of parental rights." Id., 185.

On appeal, the petitioner contends that § 45a-715 et seq. contain no mandate that the trial court consider the financial condition of the parents in determining the best interest of the child in consensual termination proceedings and, therefore, that the Appellate Court improperly construed the statutory scheme to impose

such a requirement. In addition, the petitioner claims that such a requirement constitutes a constitutionally impermissible classification based on wealth.

Before turning to the petitioner's claims, it is necessary to understand fully the significance of the issue before this court. "[T]he termination of parental rights is a most serious and sensitive judicial action." *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). A judgment terminating a parent's rights not only severs the emotional and physical ties between parent and child, but also absolves that parent of all future support obligations. General Statutes § 45a-707 (g).[6] It would be anathema for our law to allow parents to terminate voluntarily their parental rights "solely for the purpose of evading or relieving [themselves] of responsibility to pay child support." 3 D. Kramer, Legal Rights of Children (2d Ed. 1994) § 28.14, p. 45. As one court wrote, "[s]imply put, no parent may blithely walk away from his or her parental responsibilities." *In Interest of A.B.*, 151 Wis. 2d 312, 322, 444 N.W.2d 415 (Wis. App. 1989). Against this backdrop, we turn to the petitioner's claims.

## I

The petitioner first claims that the Appellate Court improperly required that the financial condition of the parents be considered by a trial court as one of the criteria for determining the best interest of the child in consensual termination proceedings. Specifically, the petitioner claims that the procedure and criteria for the consensual termination of parental rights are

---

[6] General Statutes § 45a-707 (g) defines "[t]ermination of parental rights" as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent or parents so that the child is free for adoption except it shall not affect the right of inheritance of the child or the religious affiliation of the child."

clearly set forth in General Statutes § 45a-717 (f), and therefore, the Appellate Court improperly looked to § 45a-717 (e) (1)[7] for guidance in interpreting the phrase "best interest of the child" contained in § 45a-717 (f). We disagree.

The termination of parental rights is governed strictly by statute.[8] General Statutes § 45a-715 et seq.; see also General Statutes § 17a-112 (termination of parental rights of children committed to commissioner of children and families). Pursuant to § 45a-715 (a),[9] a petition to terminate parental rights can be initiated

[7] General Statutes § 45a-717 (e) (1) provides: "The court may, and in any contested case shall, request the commissioner of children and families or any child-placing agency licensed by the commissioner to make an investigation and written report to it, within ninety days from the receipt of such request. The report shall indicate the physical, mental and emotional status of the child and shall contain such facts as may be relevant to determine whether the proposed termination of parental rights will be for the welfare of the child, including the physical, mental, social and *financial condition* of the natural parents, and any other factors which the commissioner or such agency finds relevant to determine whether the proposed termination will be for the welfare of the child." (Emphasis added.)

[8] Both the common law; 59 Am. Jur. 2d. § 51; and the statutory law; General Statutes § 46b-37; recognize that a parent has an obligation to support a minor child to the best of the parent's ability. This obligation is deeply rooted in our law. For example, in the 1750s, Blackstone stated: "The duty of parents to provide for the *maintenance* of their children is a principle of natural law . . . . By begetting them therefore they have entered into a voluntary obligation, to endeavor, as far as in them lies, that the life that they have bestowed shall be supported and preserved. And thus the children will have a perfect *right* of receiving maintenance from their parents. . . . [A]nd the manner in which this obligation shall be performed, is thus pointed out. The father, and mother, grandfather, and grandmother of poor impotent persons shall maintain them at their own charges, if of sufficient ability . . . and if a parent runs away, and leaves his children, the churchwardens and overseers of the parish shall seize his rents, goods, and chattels, and dispose of them towards their relief." (Emphasis in original.) 1 W. Blackstone, Commentaries on the Laws of England (1765) pp. 435–36.

[9] General Statutes § 45a-715 (a) provides: "Any of the following persons may petition the court of probate to terminate parental rights of all persons who may have parental rights regarding any minor child or for the termination of parental rights of only one parent provided the application

by the child's parent,[10] guardian or blood relative, the town selectmen, the commissioner of children and families or a child care agency authorized by the state. The petition must state the facts upon which the termination is sought and the legal grounds for authorizing termination. General Statutes § 45a-715 (b) (6). Within thirty days of filing, a hearing on the petition must be held. General Statutes § 45a-716 (a). Notice of the hearing must be served on the parents of the minor child and the commissioner of children and families. General Statutes § 45a-716 (b).[11]

so states: (1) Either or both parents, including a parent who is a minor; (2) the guardian of the child; (3) the selectmen of any town having charge of any foundling child; (4) a duly authorized officer of any child care agency or child-placing agency or organization or any children's home or similar institution approved by the commissioner of children and families; (5) a blood relative of the child, descended from a common ancestor not more than three generations removed from the child, if the parent or parents have abandoned or deserted the child; (6) the commissioner of children and families, provided the custodial parent of such minor child has consented to the termination of parental rights and the child has not been committed to the commissioner, and no application for commitment has been made; provided in any case hereunder where the minor child with respect to whom the petition is brought has attained the age of twelve, the minor child shall join in the petition."

[10] A parent voluntarily may petition for the termination of his or her parental rights, even in the absence of a pending adoption or state custodial placement. General Statutes § 45a-715 (a); *In re Theresa S.*, 196 Conn. 18, 30–31, 491 A.2d 355 (1985); *In re Bruce R.*, supra, 34 Conn. App. 180–81.

[11] General Statutes § 45a-716 (b) provides: "The court shall cause notice of the hearing to be given to the following persons as applicable: (1) The parent or parents of the minor child, including any parent who has been removed as guardian on or after October 1, 1973, under section 45a-606; (2) the father of any minor child born out of wedlock, provided at the time of the filing of the petition (A) he has been adjudicated the father of such child by a court of competent jurisdiction, or (B) he has acknowledged in writing to be the father of such child, or (C) he has contributed regularly to the support of such child, or (D) his name appears on the birth certificate, or (E) he has filed a claim for paternity as provided under section 46b-172a, or (F) he has been named in the petition as the father of the minor child by the mother; (3) the guardian or any other person whom the court shall deem appropriate; (4) the commissioner of children and families. If the recipient of the notice is a person described in subdivision (1) or (2) of

At the hearing, the court may order a physical or psychiatric evaluation of the child and/or one or both parents; General Statutes § 45a-717 (d); and "may, and in any contested case shall, request the commissioner of children and families . . . to make an investigation and written report . . . [as to the] physical, mental and emotional status of the child and shall contain such facts as may be relevant to determine whether the proposed termination of parental rights will be for the welfare of the child, including the physical, mental, social and financial condition of the natural parents . . . ." General Statutes § 45a-717 (e) (1).

In evaluating a petition, the court employs a standard that varies depending upon whether the parent whose rights are being terminated consents to the termination. To grant a consensual petition, the court must find "upon clear and convincing evidence that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child . . . ." General Statutes § 45a-717 (f); see footnote 2. Thus, the consensual termination of parental rights under § 45a-717 (f) turns on two findings, both of which must be established on the basis of clear and convincing evidence. Initially, the trial court must find that the parent whose rights are being terminated has "voluntarily and knowingly" consented to the proceedings. See General Statutes § 45a-715 (d) (written consent form must

this subsection or is any other person whose parental rights are sought to be terminated in the petition, the notice shall contain a statement that the respondent has the right to be represented by counsel and that if he is unable to pay for counsel, counsel will be appointed for him. The reasonable compensation for such counsel shall be established by, and paid from funds appropriated to, the judicial department or, in the case of a probate court matter, the reasonable compensation of counsel appointed for the respondent parent or the child shall be established by the probate court administrator and paid from the Probate Court Administration Fund."

be signed).[12] Thereafter, the trial court must determine that termination would be in the child's best interest.

Nonconsensual termination proceedings, also governed by § 45a-717 (f); see footnote 2; involve a different two step process. First, the petitioner must prove, by clear and convincing evidence, one of the specified statutory bases for termination, namely, that: (1) "[t]he child has been abandoned by the parent"; (2) "the child has been denied . . . the care, guidance or control necessary for his physical, educational, moral or emotional well-being"; or (3) "there is no ongoing parent-child relationship." General Statutes § 45a-717 (f) (1) through (3); footnote 2; see *In re Valerie D.*, 223 Conn. 492, 517, 613 A.2d 748 (1992); see also *In re Kelly S.*, 29 Conn. App. 600, 617–18, 616 A.2d 1161 (1992). Second, if one of the statutory bases is proven, then the court proceeds to the dispositional phase in which the petitioner must prove, on the basis of clear and convincing evidence, that the termination would be in the best interest of the child. *In re Romance M.*, 229 Conn. 345, 355–57, 641 A.2d 378 (1994); *In re Valerie D.*, supra, 511. "Our statutes and case law make it crystal clear that the determination of the child's best interests comes into play only after statutory grounds for [nonconsensual] termination of parental rights have been established by clear and convincing evidence." *In re Valerie D.*, supra, 511. In the dispositional phase of a *nonconsensual* case, when the focus is on the best interest of the child, General Statutes § 45a-717 (h)[13]

---

[12] In the present case, it is uncontested that the petitioner voluntarily and knowingly consented to the termination of his parental rights.

[13] General Statutes § 45a-717 (h) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent,

requires the trial court to consider and make written findings on certain specified criteria. Among these criteria, the trial court must consider whether "the economic circumstances of the parent" have "prevented [that parent] from maintaining a meaningful relationship with the child." General Statutes § 45a-717 (h) (6).

Unlike § 45a-717 (h) which enumerates certain factors that *must* be considered regarding the affected child's best interest in granting a nonconsensual petition, no statute describes the factors that must be considered in the case of a consensual petition. *In re Bruce R.*, supra, 34 Conn. App. 182–83. Identification of the relevant factors in this context is a question of legislative intent. We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. *State* v. *Kozlowski*, 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith*, 194 Conn. 52, 57, 480 A.2d 425 (1984). " 'In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to

and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .' " *Frillici* v. *Westport,* 231 Conn. 418, 431–32, 650 A.2d 557 (1994); *Fleming* v. *Garnett,* 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz,* 230 Conn. 400, 409, 645 A.2d 965 (1994); *Ambroise* v. *William Raveis Real Estate, Inc.,* 226 Conn. 757, 764, 628 A.2d 1303 (1993).

As discussed above, the trial court's paramount objective, pursuant to § 45a-717 (f), is to determine what would be in the child's best interest. This phrase is purposefully broad to enable the trial court to exercise its discretion based upon a host of considerations. What is clear, however, is that in deciding whether to grant a consensual petition to terminate parental rights, focus must be on how the child's well-being would be affected by the loss of the consenting parent, not on the consenting parent's desire to rid himself or herself of the unwanted obligation to support that child.

Although the legislative history and circumstances surrounding the enactment of § 45a-717 (f) are silent on the issue before the court, the legislature clearly expressed the policy that guides our determination in this case. General Statutes § 45a-706 expressly provides that § 45a-717 "shall be liberally construed in the best interests of any child for whom a petition has been filed . . . ." See *Guille* v. *Guille,* 196 Conn. 260, 266, 492 A.2d 175 (1985) (broadly construing statutes regarding parental support of minor children); *Faraday* v. *Dube,* 175 Conn. 438, 443, 399 A.2d 1262 (1978) (same).

The petitioner argues that we must strictly construe all statutory provisions regarding the termination of parental rights, including the phrase "best interest of the child" as it is used in § 45a-717 (f). Although it is true that we have insisted upon strict compliance with the statutory criteria in the adjudicatory phase of non-

consensual termination proceedings; *In re Jessica M.*, 217 Conn. 459, 466, 586 A.2d 597 (1991); *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 672, 420 A.2d 875 (1979); such strict compliance was necessary in that context to guard against improper interference with a parent's constitutionally protected interest in maintaining a relationship with his or her child.

The present situation is different in that the petitioner has initiated this action in order to abandon his responsibility to support his children. Hence, the mandate of § 45a-706 compels the conclusion that the legislature intended that the best interest of the child be construed generously and broadly, rather than strictly and narrowly, in consensual termination proceedings. This construction is in accord with our decisions, albeit in other contexts, in which we have liberally interpreted the phrase "best interest of the child." See, e.g., *Oller* v. *Oller-Chiang*, 230 Conn. 828, 848–49, 646 A.2d 822 (1994) (guardianship); *In re Luis C.*, 210 Conn. 157, 165, 554 A.2d 722 (1989) (custody); *Michaud* v. *Wawruck*, 209 Conn. 407, 414, 551 A.2d 738 (1988) (visitation); *In re Kezia M.*, 33 Conn. App. 12, 22, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993) (foster care).

"Statutes are to be construed consistently with other relevant statutes, because we presume that the legislature intended to create a coherent body of law. *Baybank Connecticut, N.A.* v. *Thumlert*, [222 Conn. 784, 790, 610 A.2d 658 (1992)]." *In re Valerie D.*, supra, 223 Conn. 533. Thus, we must assume that the subsections of § 45a-717 form a consistent body of law. " 'A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be con-

strued.' 2A J. Sutherland, Statutory Construction (5th Ed. 1992) § 46.05, p. 103 . . . ." *State* v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80 (1995); see *Dukes* v. *Durante*, 192 Conn. 207, 214, 471 A.2d 1368 (1984); *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 57, 392 A.2d 491 (1978).

Our analysis of what factors must be considered in evaluating the child's best interest in a consensual termination petition is informed, therefore, by the other subsections of § 45a-717. Specifically, § 45a-717 (e) (1) requires that, in any contested case, the mandatory investigative report prepared by the department of children and families, or its designee, contain information relevant to the financial condition of the parents. The statute also provides that in a noncontested case the commissioner may request such information. The purpose of this requirement is to ensure that information regarding the financial support of the minor child is considered as a factor, along with the child's emotional, physical and educational well-being, in assessing the affected child's best interest.

Because the present case is contested by the respondent mother, § 45a-717 (e) (1) requires the court to ensure that adequate information regarding the financial condition of the parents is before the court. It would be illogical to require a trial court to receive this material, but then not to require the trial court at least to consider the information therein contained. This requirement is particularly important in cases such as this one, where a father seeks to divest himself of responsibility for his children. Requiring that the parents' financial condition be a consideration in determining the children's best interest will deter the filing of a consensual petition that is no more than a ruse or a sham to avoid support obligations. Further, such information will enable the trial court to make a determination that is searching, penetrating and thorough.

Although the financial condition of the parents is not dispositive, the trial court must consider it in reaching a decision as to the best interest of the child. This requirement is in accord with the state and federal policies imposing on parents the responsibility of providing for the support of their children.

Indeed, to interpret the current statutory scheme to permit a trial court to forgo consideration of the financial condition of the parents would ignore the clear federal and state policies that indisputably mandate that, in all but the most extreme cases, children should be maintained and supported by their parents. "[B]oth state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support.[14] *Turner* v. *Turner*, 219 Conn. 703, 713–20, 595 A.2d 297 (1991); 42 U.S.C. § 651 et seq. (Part D of Title IV of the Social Security Act)." (Internal quotation marks omitted.) *In re Bruce R.*, supra, 34 Conn. App. 184.

Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled. See, e.g., General Statutes § 46b-37 (b) ("it shall be the joint duty of each spouse to support his or her family"); General Statutes §§ 52-362b, 52-362c and 52-362f (child support can be withheld from paychecks of parents or from unemployment compensation); General Statutes § 52-362e (unpaid support obligations can be deducted from federal and state income tax refunds); General Statutes § 52-362d (a) (lien may be placed on "any property, real or personal" of obligor who owes $500 or more of child support); General Statutes

---

[14] For a comprehensive discussion of the issue of child support enforcement policy, see H. Krause, "Child Support Reassessed: Limits of Private Responsibility and the Public Interest," 24 Fam. L.Q., No. 1 (1990).

§ 52-362d (b) (delinquencies of parent-obligor in excess of $1000 may be reported to consumer reporting agencies); General Statutes § 52-362d (c) (lottery winnings of delinquent parent will be reduced by amount of child support owed); General Statutes § 52-362i (court may order parent-obligor to provide cash deposit to be held in escrow by Connecticut child support enforcement bureau); Public Acts 1995, No. 95-310, §§ 2, 4 and 9 (driver's license of parent-obligor may be suspended). Indeed, General Statutes § 53-304 (a), the criminal nonsupport statute, establishes that "[a]ny person who neglects or refuses to furnish reasonably necessary support to his . . . child under the age of eighteen . . . shall be deemed guilty of nonsupport and shall be imprisoned not more than one year, unless he shows to the court before which the trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support." These statutory provisions demonstrate, without doubt, our legislature's position regarding the duty of parents to pay child support.

In addition, we repeatedly have recognized that children must be supported *adequately*. See, e.g., *Masters* v. *Masters*, 201 Conn. 50, 67–68, 513 A.2d 104 (1986) (review of child support awards); *Guille* v. *Guille*, supra, 196 Conn. 266 (parent cannot, without court approval, contract away obligation of support for minor children); *Burke* v. *Burke*, 137 Conn. 74, 79, 75 A.2d 42 (1950) (common law prohibited parents from contractually restricting or defeating their children's right to support); see also *In re Juvenile Appeal (85-BC)*, 195 Conn. 344, 352, 488 A.2d 790 (1985) (recognizing that established public policy of state is to protect children and to make home safe for children); *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 318–19, 460 A.2d 1277 (1983) (recognizing state's "continuing parens patriae interest . . . in the well being of children"); *State* v. *Anonymous*, 179 Conn. 155, 170–71, 425 A.2d 939 (1979)

(recognizing state's "express public policy . . . to provide all of its children a safe, stable nurturing environment"). This commitment would be undermined if we permitted a consensual petition, which frees the petitioner from any further obligation to support his or her children, to be granted without considering the financial condition of the parents.

Likewise, current federal child support enforcement legislation clearly demonstrates a federal policy of ensuring the financial support of children by their parents. See, e.g., Family Support Act of 1988, Pub. L. No. 100-485, 102 Stat. 2343 (child support can be withheld from paychecks of parents delinquent for one month); Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat. 1305 (federal law requires that states provide for imposition of liens against property of defaulting parent-obligor and reporting of delinquencies in excess of $1000 to credit companies); Title IV-D of Social Security Act (unpaid support obligations can be deducted from federal and state income tax refunds); 42 U.S.C. § 653 (deserting parents can be located through Parent Locator Service).

Similarly, the courts of our sister states universally have held that parents may not voluntarily terminate their parental rights simply to avoid their responsibility to support their children. See, e.g., *Ex parte Brooks*, 513 So. 2d 614, 616–17 (Ala. 1987), overruled on other grounds sub nom. *Ex parte Beasley*, 564 So. 2d 950 (Ala. 1990) (termination of parental rights statutes not meant to be "means for a parent to avoid his obligation to support his child"); *Husband (K)* v. *Wife (K)*, 343 A.2d 597, 599 (Del. Super. 1975) (father may not defeat court support order by willfully refusing to reach his reasonable earning capacity); *In re K.L.S.*, 180 Ga. App. 688, 689, 350 S.E.2d 50 (1986) ("statutory authority of the juvenile court to entertain petitions to terminate parental

rights does not extend to petitions by parents seeking judicial imprimatur of their own, voluntary abandonment of parental responsibility"); *In Interest of D.W.K.*, 365 N.W.2d 32, 35 (Iowa 1985) (where father had expressed no interest in his child, his consensual termination petition was denied in best interest of child where termination would "ultimately . . . open a hatch for a parent to escape his or her duty to support a child"); *In Interest of K.J.K.*, 396 N.W.2d 370, 371–72 (Iowa App. 1986) (termination not in "child's best interest, particularly when considered with the child's right to support from her father"); *In re Welfare of Alle*, 304 Minn. 254, 258, 230 N.W.2d 574 (1975) ("[t]he children wish to be able to look to their legal father for financial support; it surely cannot be in their best interests to have that avenue of support terminated"); *In Interest of R.A.S.*, 826 S.W.2d 397 (Mo. App. 1992) (consensual termination petition denied where evidence showed that father sought to avoid his support obligation); *R.H. v. M.K.*, 254 N.J. Super. 480, 603 A.2d 995 (1991) (parent may not voluntarily surrender his or her parental rights other than in adoption context); *Commonwealth Dept. of Public Welfare ex rel. Hager v. Woolf*, 276 Pa. Super. 433, 439, 419 A.2d 535 (1980) (statute "was not designed to permit a parent to avoid a support obligation by the mere filing of a petition to terminate parental rights, any more than a parent is permitted to 'bargain away' the obligation by any other means"); *Kiesel v. Kiesel*, 619 P.2d 1374, 1377 (Utah 1980) (father may not intentionally escape child support obligations by channeling money into unprofitable businesses); *Curran v. Curran*, 26 Wash. App. 108, 110–11, 611 P.2d 1350 (1980) (parent may not unreasonably remain in low paying job to avoid support obligation); *In Interest of A.B.*, supra, 151 Wis. 2d 322 (support obligation of father to be considered as one of "best interest" considerations in consensual termination petition

proceeding); see also note, "Child Support Properly a Factor in Determining the Best Interests of Child in Voluntary Termination of Parental Rights," 58 Mo. L. Rev. 969, 987 (1993) (child support policy "must not be undermined by allowing absent fathers to get out of paying child support by voluntarily terminating their parental rights, in the absence of it being in the best interests of the child").

Legislative and judicial efforts to hold parents to their financial responsibility to support their children would be eviscerated if we were to allow an unfettered legal avenue through which a parent without regard to the best interest of the child could avoid *all* responsibility for future support. "We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck* v. *Jacquemin*, 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). [*Turner* v. *Turner*, supra, 219 Conn. 713]. *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 453, 627 A.2d 1329 (1993); see also *State* v. *Johnson*, [227 Conn. 534, 542, 630 A.2d 1059 (1993)]; *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 650–51, 600 A.2d 1 (1991)." (Internal quotation marks omitted.) *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 624, 642 A.2d 1186 (1994). Surely the legislature did not intend that § 45a-717 (f) be used as a means for a parent to avoid the obligation to support his or her children. To interpret the statutory scheme as such would alter radically the parental support obligation which our laws consistently have reinforced.[15]

---

[15] Indeed, during the hearing before it, the trial court heard an exchange between the respondent and her counsel that was illustrative of the potential for abuse of the consensual termination proceeding for personal convenience:

"[Respondent's attorney]: Based on your own personal observation or your hearing statements made by your ex-husband, do you know, not what

Our courts are entrusted with the responsibility of determining the best interest of children who come before them. When a child's welfare is threatened by the continuation of parental rights, the law provides a means for terminating those rights. The termination of parental rights, however, is a drastic solution; it severs all ties between parent and child, including the parent's duty to support his or her children. As such, parental rights should not be terminated solely to advance the convenience and interests, either emotional or financial, of the parent. See *In Interest of A.B.*, supra, 151 Wis. 2d 322. Such petitions seek judicial imprimatur on a parent's own, voluntary abandonment of his or her parental responsibility. This court cannot condone such actions without a careful consideration of the financial condition of the parents as part of judicial review. Therefore, trial courts should grant consensual petitions only in those rare situations where, after considering the totality of the circumstances, including the financial condition of the parents, granting that petition truly would be in the best interest of the child. See *In re Welfare of Alle*, supra, 304 Minn. 254.

On the basis of the statutory scheme and the overwhelming public policy in support of requiring that par-

someone else had said, except for him, do you know why he has filed this petition?

"[Respondent:] To get out of financially paying for the kids.

\* \* \*

"Q. At the time that you went to court in March of 1991 before [the trial court] at which time a restraining order was entered, did [the petitioner] make any statements to you or before anyone else as to why he would file a termination petition?

"A. For not paying support or insurance.

"Q. Did you hear him say that?

"A. It's a matter of public record.

"Q. What did you hear?

"A. He said I will not see, talk to, or bother with the children again. I will terminate my parental rights on the grounds that I do not pay insurance or support."

ents be held financially responsible for their children's support, we conclude that the trial court must consider the financial condition of the parents as one of the factors in determining the best interest of the child in contested consensual petitions to terminate parental rights.

## II

The petitioner's second claim is that requiring that the financial condition of the parents be considered in a consensual termination of parental rights proceeding would violate the due process and equal protection clauses of the Connecticut and United States constitutions by creating an impermissible classification based on wealth.[16] This claim is not reviewable because it was

---

[16] The amicus curiae brief of the Connecticut Civil Liberties Union Foundation goes one step further. The amicus suggests that the Appellate Court interpreted § 45a-717 (e) (1) as requiring that the financial condition of the parents be considered in determining the best interest of the child in all contested petitions, whether or not based on consent. As such, the amicus argues that such a requirement in the context of nonconsensual petitions could adversely impact minority groups, the poor and the uneducated and could produce racially disparate results. This concern was recognized by the United States Supreme Court in *Santosky* v. *Kramer*, 455 U.S. 745, 762–64, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

We decline to consider this argument. We granted permission for an amicus brief limited solely to the issues before us which were properly raised by the parties. See Practice Book § 4067; *In re Saba P.*, 13 Conn. App. 605, 538 A.2d 711, cert. denied, 207 Conn. 811, 541 A.2d 1241 (1988). Absent extraordinary circumstances not present here, we will not determine a constitutional question of first impression that was neither raised at trial nor relied upon by the parties on appeal. See *Simons* v. *Canty*, 195 Conn. 524, 529 n.8, 488 A.2d 1267 (1985).

We note, however, that our holding today is limited explicitly to *consensual* termination proceedings and, as such, does not relate to the concerns expressed by the amicus. As discussed above, this appeal concerns our interpretation of the best interest of the child standard as enunciated in § 45a-717 (f) in consensual petitions. We are persuaded that the combination of §§ 45a-717 (e) (1) and 45a-706, and the overwhelming public policy of this state and our nation mandate that the financial condition of the parents be considered in determining the best interest of the child when terminating, pursuant to a consensual petition initiated by the parent, parental

not adequately briefed. The petitioner has cited no case or authority which recognizes any constitutional right, under either the state or the federal constitution, to abandon his obligation to provide for his children financially. We have declined to review constitutional claims, deeming them to have been abandoned, when the petitioner has not properly briefed and analyzed them. *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991); *State* v. *Gaines*, 196 Conn. 395, 397–98 n.2, 493 A.2d 209 (1985); see *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); *Cohen* v. *Security Title & Guaranty Co.*, 212 Conn. 436, 437 n.1, 562 A.2d 510 (1989); *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 732, 557 A.2d 116 (1989). Because the petitioner did not adequately brief the constitutional issue, we decline to review it.

For the above reasons, we conclude that, in a consensual termination of parental rights proceeding, the trial court is required to consider the financial condition of the child's parents in order to determine whether the termination of a parent's rights is in the best interest of the child.

Accordingly, the judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

rights. As such, we do not reach the question of whether the parents' financial condition must be considered in nonconsensual termination proceedings. Indeed, § 45a-717 (h) explicitly lists what factors must be considered in determining the best interest of the child in the nonconsensual context and subdivision (6) states that the economic circumstances of the parent can be considered only to the extent that they have prevented a meaningful relationship with the child.