[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO SET ASIDE
In this case, the court rendered judgment against both defendants, Beverly Carswell and Almeter Russell d/b/a Almeter Real Estate. Based on factual findings fully discussed in the court's memorandum of June 11, 1996, the court found that there existed an implied agency relationship between the plaintiff and Russell. Based particularly on the case of Licari v. Blackwelder,
14 CA 46, 52-53, the court further found that as a fiduciary, the defendant Russell was required to exercise fidelity and good faith toward the plaintiff.
The defendant now seeks to set aside the judgment rendered only as against the defendant Russell. Counsel for Russell, in support of his motion to set aside, argues that there is no support for finding a duty to exercise fidelity and good faith in the case of an implied contract where there is no underlying or concurrent contract to which such duty may attach. Counsel cites the cases of Cohen v. Security Title Guaranty Co., 212 Conn. 436
and Barry v. Posi-Seal International, 40 CA 577 as support for his contention. The court is not persuaded. Counsel admits that the court in the Cohen case, supra, did not reach this question. The Barry case involves an employment contract which ordinarily involves a violation of some public policy. California cases cited in the Barry case, supra, also make a distinction in cases of employment contracts, which it found did not enjoy a CT Page 5316-UUUU "special relationship," such as existed between an insurer and insured. This court must observe that such a "special relationship" existing between principal and agent is analogous to that existing between an insurer and insured. Counsel for defendant Russell apparently ignores the Licari case, supra, upon which this court has relied.
One further matter should be addressed. Defendant's counsel finds fault with the court's assessment of damages, claiming that a seller should not be deprived of his profit, when, as in this case, Danny Evans, by sheer speculative genius, was able to generate a profit of $20,000.
The court does not wish to subvert the entrepreneurial system or discourage entrepreneurs. The claim, however, is subject to some analysis.
This dashing entrepreneur entered into a contract to sell a house which he did not own and to which he obtained title approximately a month later, but which stipulated a closing date on October 24, 1985, the same date as the execution of the contract, before Evans obtained title. A contract stipulation for a deposit of $5500 was never paid. In addition, Danny Evans title deed was not to be recorded until March 21, 1986, the date of the actual closing.
A closing statement prepared by Attorney Beverly Carswell to the bank reflected that there was due to Evans the sum of $6,628.19 as seller's proceeds from the sale. He did not receive this sum in cash but in the form of a second mortgage, something of which the plaintiff was unaware until the closing. He later assigned the mortgage to Gorbach on April 18, 1986.
It was not disclosed what amount, if any, Danny Evans received for this assignment. The court suspects that the assignment was really an additional payment to Gorbach for the transfer of title on November 18, 1985.
In contrast to the bank closing statement, a closing statement to HUD listed the amount of proceeds to Evans as $7,428.39. The difference, of course, reflects the amount of $800 listed in the bank closing statement as being held by Almeter Russell, an item which, to this day has not been explained.
Under the court's analysis, the question pointedly presents CT Page 5316-VVVV itself as to what profit Danny Evans was being deprived of. He did not receive the deposit of $5500 stipulated in the contract. He received not cash, but a second mortgage at the closing, later assigned to Gorbach, another questionable transaction. He did not receive $800 which was listed as being held by Almeter Russell. He apparently assumed the closing costs on both sides, since the plaintiff was not asked to bring any funds to the closing, and, didn't. These closing costs totalled $5,108.38. The court can only conclude that his $20,000 profit was an evanescent one.
The court's overall conclusion is that Danny Evans was not the real seller, but, along with Beverly Carswell, a bit player in a production starring Almeter Russell and Gorbach.
The motion to set aside the judgment is denied.
BELINKIE, JUDGE TRIAL REFEREE