MEMORANDUM OF DECISION
This is an action for termination of parental rights instituted by the Department of Children and Families (DCF) and filed on August 11, 1995 at the Superior Court for Juvenile Matters in Hartford. The case was subsequently transferred to the Child Protection Session of the Superior Court for Juvenile Matters at Middletown for trial. The children are Chan-Charay T., born on August 5, 1991; Kristina W., born on January 27, 1992; and Jasmine Monique W., born on January 24, 1995. The mother of these children is Ann Marie W. who was born on March 20, 1966. The father of Chan-Charay T. is Charles T. who was born on October 30, 1944. Mr. T. was personally served and appeared to contest the action for termination of parental rights. The father of Kristina W. is Dwayne H. whose whereabouts are unknown and who has never taken any role in the life of Kristina. The father of Jasmine Monique is one Leonard T. whose whereabouts are unknown and who has never taken any interest in the life of Jasmine Monique.[2]
The case of Chan-Charay T. and Kristina W. came to the court's attention first in February 1994. The East Hartford Police Department stated that the mother of the children, Ann Marie, had been arrested on two counts of risk of injury after she had left the children home alone for approximately 45 minutes while she went to buy crack cocaine. The police reported that the apartment was in poor condition, sparsely furnished with only a mattress and kitchen table. The children were found hysterically crying. At first Ann Marie denied even having children. She later CT Page 9804 denied leaving them home alone. The children were removed and placed in foster care on February 17, 1994. Neither child had any clothing or belongings. Subsequent to their removal Ann Marie did not ask about her children or request visitation. Ann Marie had three older children. The parental rights to those children were terminated on September 7, 1990 due to Ann Marie's chronic neglect, substance abuse and abandonment.
On April 11, 1994, the court (Foley, J.), following a trial, found the children to be neglected in that they have been permitted to live under conditions injurious to their well being. They were committed to the care and custody of the Commissioner of DCF until October 11, 1995.
A petition was filed to extend the commitment on June 21, 1995. The petition indicated the reasons for a continuation of the commitment were that the mother had continued to need to work on her substance abuse issues; the children had been identified as having special needs; mother's visitation with the children had been very poor; mother was currently homeless; mother continued to be involved with the criminal justice system; the father had continued to need to work on substance abuse issues; the father's visitation with his child, Chan-Charay, had been nominal; the father had mental health issues which may impact on his ability to care for the child; and the child continued to need out-of-home placement. That petition was granted and the commitment was extended until October 11, 1996. The commitment was again extended on September 10, 1996 (Teller, J.) for an additional period not to exceed twelve months.
After Chan-Charay T. and Kristina W. had been removed from Ann Marie's custody and were in foster placement, Ann Marie subsequently gave birth to her sixth child, Jasmine Monique on January 24, 1995. Both Jasmine and Ann Marie tested positive for cocaine. Despite the high risk and Ann Marie's extensive prior DCF history, the Department allowed Jasmine to remain with Ann Marie with the assistance of various support services. They were referred to the St. Vincent De Paul Center in Waterbury. Visiting nurse services were provided to follow the child's medical progress. On January 31, 1995 Ann Marie and the baby entered New Life Center, a residential substance abuse treatment facility. On February 28th Ann Marie was discharged due to non-compliance and for making threatening statements toward another resident. On April 7, 1995 Ann Marie left the Salvation Army Shelter (Marshall House) without informing DCF of her departure. Four days later CT Page 9805 DCF received a referral from the East Hartford Visiting Nurses Association and the East Hartford Police that at 10:00 p.m. Ann Marie had left the home of a male with whom she was living and later called at 1:10 a.m. indicating that she would jump off a bridge into the Connecticut River with the child before she would allow DCF to take the child. On April 13, 1995 an order of temporary custody was granted for Jasmine Monique at the Superior Court for Juvenile Matters at Rockville. Jasmine was adjudicated a neglected child on March 20, 1996 (Keller, J.).
On May 3, 1995 the Newington Children's Hospital diagnosed Chan-Charay with neurological impairments and reactive attachment disorder. They reported that Chan-Charay is a medically fragile child who has specialized needs and the Children's Hospital recommended to DCF that they reconsider the decision to move toward reunification with the child's mother. It was further recommended that Chan-Charay and Kristina not be separated.
THE PARENTS
 MOTHER Ms. Ann Marie W. has been generally uncooperative in providing DCF with any information regarding her family. It is believed that she was born on March 20, 1966 and is currently 30 years of age. She was a foster child with DCF herself and was adopted by her foster parents. She describes her ethnic heritage as African American. She attended school until the tenth grade. Her only reported employment has been in a supermarket or deli, which she held for a few months until she got tired of it. She indicates that she has never been married and has never been in the military service. She admits to abusing alcohol and drugs since 1988 and that she has made numerous attempts to overcome her habit, all of which have been unsuccessful. She has three older children who were removed from her and for whom her parental rights were terminated. There are three younger children who are the subjects of this action to terminate her parental rights. She is presently pregnant, since April 1996, and initially refused to obtain prenatal care and continued, while not incarcerated, to abuse drugs and alcohol during her early pregnancy. She presently suffers from a terminal illness which could be transmitted to her present unborn child. Since this past summer she has been arrested for a violation of probation and is presently incarcerated. She testified in court during the trial of this case that she is now getting good prenatal care while she is at the York Correctional Center. CT Page 9806
Ann Marie has a criminal history which included convictions for forgery, larceny sixth and failure to appear. She was sentenced to five years in jail, some or all of which sentence had been suspended. She was placed on probation for 18 months until she violated that probation earlier this summer. The conditions of probation were that she was allowed the opportunity to avoid going back to jail if she would admit herself to a long-term treatment facility. She went into a ten-day facility at the Reed Center and completed that on a Friday; she was supposed to report to her long-term treatment facility on the following Monday. She failed to appear for that and was subsequently brought in for violation of probation. She remains incarcerated.
FATHER Charles T. (Father to Chan-Charay). Mr. T. has been very uncooperative with the Department in the past and reluctant to provide any information concerning himself or his family. He is believed to have been born on October 30, 1944 and is accordingly 52 years of age. He is 22 years older than Ann Marie. Ann Marie testified in court that Mr. T. jumped on her and hit her in the head with a plate, which required eight stitches to close the wound. He threatened her with a knife while she was pregnant. "He is a monster," according to Ann Marie. He went to jail more than once, he drinks, he gets violent, and he has a long substance abuse history. On November 22, 1994 he was deemed to be disabled by the State of Connecticut for schizophrenia and alcohol/cocaine addiction. The social study indicates that Mr. T. is an African American male and has a criminal record which includes assault, drug possession and breach of peace. Mr. T. is unemployed and as far as is known, presently lives with his mother, having been evicted from his last apartment. His occasional visits with Chan-Charay during the course of these proceedings could not be described as frequent and regular. Indeed between December 1995 and August 1996 he did not visit at all with Chan-Charay.
FATHER Dwayne H. (putative father to Kristina W.). Ann Marie states that she does not know where Dwayne is nor would she provide any useful personal information concerning Dwayne. DCF's attempts to locate Mr. H. were unsuccessful.
FATHER Leonard D. (putative father to Jasmine W.). Ann Marie states that she does not know where Leonard is nor would she provide personal information concerning Leonard. DCF's attempts to locate him were not successful. CT Page 9807
SERVICES OFFERED During the history of this case, Ann Marie has been involved with numerous agencies for mental health, substance abuse, prenatal care, individual counseling and community health services. She has been offered services at the North Central Mental Health Clinic, Mental Health Counseling, Community Health Services, Alcohol Recovery Center and an in-patient treatment center program for substance abuse, the Reed Treatment Facility. Additional services have been offered at the CedarCrest Psychiatric Hospital for mental health services, the Child Health Clinic for prenatal care, the New Life Center, which is an inpatient and outpatient treatment center for substance abuse issues, the East Hartford Visiting Nurses Association for health care for newborn children. Ann Marie has also been offered services at her various places of incarceration.
Presently Ann Marie is incarcerated for violation of probation. This is her third incarceration in the last twelve months. The children remain in foster care where they are doing well. Chan-Charay and Kristina are placed together and Jasmine Monique is in a separate foster care facility. Visitation between Ann Marie and the children are scheduled once weekly on Thursday afternoon. Since December 1995 through October 31, 1996, Ann Marie has made only three scheduled visits. Some of that time she has been incarcerated. Her last confirmed use of drugs was on June 11, 1996, when the Probation Department conducted a drug screen which came back positive for cocaine. Since that time Ann Marie has been incarcerated.
Mr. T., the father of Chan-Charay has never offered a plan to care for her and has on several occasions indicated a willingness to have his parental rights terminated. Dr. Theresa Kreibeck, a psychologist who evaluated Chan-Charay, indicated that Mr. T. told her he had not been involved in the child's life and that he could not care for the child. Mr. T. was not evaluated by Dr. Kreibeck, but did provide some historical information. Dr. Kreibeck indicated that Chan-Charay has reactive attachment disorder, which has to do with inappropriate social relatedness to strangers. That is, Chan-Charay will embrace a person even if she doesn't know the person because she has had inconsistent relationships with her primary caretaker, or changes in the primary caretaker, or a history of abuse and neglect. Dr. Kreibeck indicated that a sudden mood swing such as those described for Ann Marie could cause a disorder if the child learns the child can't trust the primary caretaker. If the child is unable to decide who they can trust and who they cannot trust, CT Page 9808 they might suffer from a reactive attachment disorder. It should be noted further that Chan-Charay, when she was placed in foster care, didn't speak until she was nearly four years of age and as soon as she was placed in foster care, spontaneously and actively came to learn the language. Dr. Kreibeck felt that this was very significant, and was likely the result of abuse and neglect in the home, since there were no severe developmental delays which would otherwise explain the child's failure to speak. Dr. Kreibeck further indicated that Chan-Charay is very dependant upon her relationship with her younger sister, Kristina, and that Kristina had been very helpful in helping Chan-Charay learn to speak.
 When Chan-Charay first came to her current foster placement, she appeared to be unaware of the names of simple objects and had very little verbal spoken language. During her brief time in foster care, Chan-Charay has made considerable gains in the use of words. Children usually need to hear spoken language and engage in an interactive process with a speaking adult to learn spoken language. Chan-Charay, since placement in foster care, has been repeating words spoken to her by adults. In the initial stages of the PEDAL process, this behavior was thought to be echolalia.[3] However, formal assessment within the PEDAL process discovered that Chan-Charay is actually not echolalic, but is actively engaged in an imitative process of learning the names of simple objects. This would be possible only if, prior to foster placement, Chan-Charay was in an environment where there was little or no contact with a maternal figure who spoke interactively to/with the child. Why Chan-Charay did not learn spoken language while in the custody of her mother provides psychological evidence of an extreme degree of neglect of even basic human contact denied to this youngster in her first three years of life. Babies and young children demand the attention of adults. They tug at emotions even if the adult is not the parent of the child. The most normal thing for a mother is to want to speak with her child. Even the most emotionally compromised mother will still engage with her child. Indeed, many very young children, if not afforded this type of human contact, will become depressed, refuse to eat and if not force fed, will die. The fact that Chan-Charay did not die while in the custody of her mother, is a testament to the resiliency of this child.
 (Report of Theresa Kreibick, Psy. D. from Newington Children's Hospital, May 31, 1995, Petitioner's Exhibit CT Page 9809 #7.)
Ann Marie W. testified herself that she has six brothers and two sisters and that in addition to the six children she has previously had, is now presently pregnant with another girl. She indicates that she has two natural brothers, and all of the rest of the brothers and sisters are foster siblings. She indicated that she started to use drugs in 1988 in the projects where she lived. She said her friends introduced her to drugs and she liked them. When asked about her ability to take care of her children, she indicated "I have to get myself collected before I can get my kids back." She said her understanding of Chan-Charay's problems are that she has speech problems and she's nervous. She recognizes that as soon as she is released from the Correctional Center she is going to have to go in to a long-term drug rehabilitation program. She further indicates that she wants to go to school and finish her schooling; she wants to get an apartment and to raise her infant; and she is willing to work. The court reviews the testimony of Ann Marie to be aspirational. Her history indicates the likelihood for successful completion of a long term drug program as very unlikely. At no time during the past eight years has she been able to sustain her sobriety for any period outside of a correctional center or a drug abuse program. It is unfair to her children to wait to see if she will succeed in the future.
In this case the court has set expectations as follows:
1) Keep all appointments set by DCF and notify DCF of their whereabouts.
Ann Marie has not maintained the appointments scheduled with DCF, but she has kept DCF notified of her whereabouts. Mr. T. has been compliant in notifying DCF of his whereabouts but has not maintained his scheduled DCF appointments. He refused to participate in the psychological evaluation of Dr. Kreibeck.
2) Visit the children as often as permitted by DCF.
Ann Marie in the past year has missed all of her scheduled weekly visits except for three. Mr. T. has not made any effort to visit the child since December 1995 through August 1996.
3) Participate in substance abuse counseling and follow recommendations of therapist. CT Page 9810
Ms. W. has been very consistent in resisting all substance abuse treatments. She has had very poor attendance in substance abuse programs and has been prematurely discharged from over four treatment centers due to non-compliance and threatening behavior, as well as poor attendance. She did complete a ten-day program at the Reed Center but failed to go into a residential program which was required as a condition of her probation. Mr. T., who is believed to have a substantial history of substance abuse, is not in any programs known to the Department.
4) No substance abuse.
Ann Marie has tested positive for cocaine as recently as June 11, 1996. Mr. T's present drug use or non-drug use is not known to the Department.
5) No further involvement with the criminal justice system.
Ann Marie, as previously noted, is presently in the York Correctional Center.
6) Ann Marie is to cooperate with conditions of probation.
Ms. W. violated the terms of her probation for which she is presently incarcerated.
7) Parents to participate in parenting classes.
Neither Ms. W. nor Mr. T. have participated in any parenting classes.
ADJUDICATION
With respect to the statutory grounds for the termination of parental rights, the court finds by clear and convincing evidence that the child Jasmine Monique has been abandoned by her father Leonard T. and that the child Kristina W. has been abandoned by her father Dwayne H., in the sense they have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of their daughters in violation of General Statute § 17a-112(b)(1).
The court further finds by clear and convincing evidence that Chan-Charay, Kristina and Jasmine have previously been adjudicated neglected children. Since the adjudication of neglect, the parents have failed to achieve such degree of CT Page 9811 personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children they could assume responsible positions in the lives of their children, in violation of General Statute § 17a-112(b)(2). The court established expectations for these parents so that they would have a way to measure their progress toward rehabilitation. Clearly the most significant requirements of the parents were to visit regularly and maintain a good relationship with their children and to resolve their serious substance abuse problems. No parent has substantially complied with those reasonable requirements. No parent has shown themselves able to support themselves and function in society. Ann Marie presents as a chronic substance abuser who has done nothing in the three years since her children have been removed from her to improve her parenting skills or educational skills or her employment skills. It would be inappropriate to ask these children to wait any longer for the parents to rehabilitate themselves. The court finds these grounds have existed for more than one year.
With respect to all other allegations in the petitions, the court will dismiss those allegations without prejudice.
DISPOSITION
It is not sufficient to find that grounds for termination exist. The court must also determine pursuant to General Statute § 17a-112(d), as amended, if a termination of parental rights is in the best interest of the children. The court must make this finding by clear and convincing evidence. Practice Book § 1050.1(3).
1) Regarding the nature and timeliness of services offered by the DCF, the court finds that appropriate, timely services were provided by the DCF, including counseling and case management, visitation assistance and coordination, drug treatment and therapy. Agencies offered included North Central Mental Health, Community Health Service, Alcohol Recovery Center, Reed Treatment Facility, CedarCrest Psychiatric Hospital, Child Health Clinic, New Life Center and East Hartford Visiting Nurses Association.
2) Regarding the efforts of reunification pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980, the court finds by clear and convincing evidence that DCF has made reasonable efforts given the circumstances and situation to reunite the family. The vast array of services that were CT Page 9812 initially offered to Ann Marie to try to break her of her substance abuse habits, and also leaving Jasmine with her after Jasmine was born, despite a history of chronic substance abuse, reflects the efforts of DCF to hope against hope that Ann Marie would be able to rehabilitate herself. History and experience have shown that Ann Marie has not been able to rehabilitate herself.
3) Regarding court orders, fulfillment of obligations, expectations, service agreements and the like:
DCF, with the approval of the court, set reasonable and realistic expectations as have previously been described. There was only minimal compliance with respect to the most important expectations of regularly visiting the children to maintain a relationship with the children, and completing substance abuse treatment and therapy in order to eliminate the use of illegal substances. As far as is known, neither parent entered and completed substance abuse treatment and maintained themselves drug-free in a state of sustained remission.
4) Regarding significant emotional ties of the children toward parents, relatives and foster parents:
The social study and Newington Children's Hospital report indicates that the children continue to be in foster care and appear to be doing very well in that the children are comfortable, happy and well cared for. The study indicates that the children show little if any recognition of Ann Marie and do not demonstrate any attachment or familial connection to her.
5) Finding regarding the age of the children:
Chan-Charay is five years old. Kristina is three and one-half and Jasmine is one and one-half years old. These children require a stable home where they can be placed, where their needs can be well met with understanding, acceptance and patience. These children suffer from psychological and perhaps neuro-psychological fragility. They require exceptional parenting. They would not be able to receive the physical, emotional and medical support they need from their biological parents.
6) Regarding the parents' efforts to conform their conduct to the best interest of the children considering contact, conduct, communications and contributions, if any: The court finds that CT Page 9813 none of the biological parents have made realistic and sustained efforts to conform their conduct to even minimally acceptable parental standards. Giving them additional time would not in all likelihood bring their performance as parents within acceptable standards significant to make it in the best interests of the children to be reunited with them.
7) Finding regarding the prevention of the parents from having a meaningful relationship with the children: The court finds that DCF has placed the two older children in particular in very close geographic proximity to the parents to facilitate visitation, and the youngest child was placed 30 minutes away. Bus passes were made available to the parents. Any one of the parents, if they had any inclination whatsoever to visit, was able to do so. The court finds that there was no impediment placed in their path.
Further, the court is mindful of the overwhelming public policy in favor of requiring parents to financially support their children. In re Bruce R., 234 Conn. 194 (1995). There has been no showing in this case that the biological parents have the capacity to pay an adequate child support order for the children's financial interest.
ORDER
The court, having considered all statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights, further finds upon all of the facts and circumstances presented that it is in the children's best interest to terminate the parental rights of Ann Marie W., Charles T., Dwayne H. and Leonard T. Accordingly, it is ordered that their parental rights in and to the three children Chan-Charay T., Kristina W. and Jasmine Monique W. are hereby terminated. It is further ordered that the Commissioner of the Department of Children and Families are hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement for said children and that the Commissioner shall file with this court no later than 90 days following the date of judgment a written report toward such permanent placements and file such further reports as are required by state and federal law.
FOLEY, J. CT Page 9814