[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for termination of parental rights instituted by the Department of Children and Families (DCF) on February 13, 1996 at the Superior Court for Juvenile Matters in Waterbury and subsequently transferred to the Child Protection Session in Middletown for trial. The biological parent of the child is June J. While two persons have been identified, appeared and were tested to determine their paternity of the minor child, the tests excluded both named men (Petitioner's Exhibit 1). Accordingly, the father is unknown. The mother was served with the petition and an attorney was appointed to represent her. A guardian ad litem was also appointed. Both the guardian and the attorney were present and participated in the proceedings. The mother was also present during the trial of the case, which began on November 5, 1996.
The court heard from Melissa Hartmann, DCF social worker, CT Page 9987 Janice J. the foster parent, Dr. Ralph Welsh, the court appointed clinical psychologist, Anthony Frank Campagna, a second licensed clinical psychologist, Dina Andrus, a licensed clinical social worker from the Valley Mental Health Center and Melissa Pensiero, June's case manager at Valley Health Center in Ansonia, Connecticut, who, by all DCF accounts, has provided long-term, diligent and caring case management for June for several years. Each psychologist submitted evaluation reports into evidence, as well as the DCF social study submitted by the social worker. The court has fully considered the exhibits and the testimony of all witnesses.
FACTUAL FINDINGS
The court makes the following factual findings. The minor child, Daniel, was born on July 11, 1991. The mother, June. J., was born on September 11, 1965. She is presently 31 years of age. She was herself the victim of the most severe sexual abuse by her father from age fifteen to age twenty-one. Her mother was an alcoholic. June has been profoundly psychologically impaired and socially maladjusted as a result of her father's conduct. Her dysfunctional lifestyle, which is more fully set forth in the Social Study for Termination of Parental Rights, includes chronic alcohol abuse, inability to set sexual boundaries (including with strange men in the presence of her daughter), and long-standing mental health issues.
On May 1, 1992, DCF received a referral that June had left her ten-month old son Daniel in a bar in the care of a stranger. The man left the bar with the child and notified the police. On July 31, 1992 June again took Daniel to a bar where June met a man with whom she and Daniel stayed overnight. The following morning, June left her son with the man and did not return. The man subsequently contacted the police. DCF invoked a 96-hour hold on the child and subsequently, on March 11, 1993, Daniel was committed to DCF as a neglected child. This child has been committed to DCF and out of June's care since March 1993.
The testimony and exhibits itemize the repeated episodes of June's dysfunctional behavior, the offer of appropriate services to remediate the problem and June's failure to either avail herself of the treatment or complete the treatment program. A letter from case manager Melissa Pensiero, early in the case (August 23, 1993) illustrates the problem: CT Page 9988
 I am a Case Manager at Valley Mental Health Center in Ansonia, CT and have been providing case management services to June J. Since May, 1993. At that time, June was involved in out patient therapy at Cochran Clinic, alcohol counseling at Lower Naugatuck Valley Counseling on Alcohol and Drug Addiction, Independent Living Skills classes at Valley Mental Health Center and had monthly meetings with her Probation Officer.
 When June was referred for case management, she was non-compliant with medication and treatment and had moved out of her boyfriend's apartment, a cyclical pattern for June. She exhibited cognitive limitations, poor judgment and poor decision making skills. Part of my role with June was to help her comply with treatment, which she has been resistant to do.
 During the past three months, June has consistently been non-compliant with case management appointments and services as well as medication. She continues to exhibit poor judgment and poor decision making, often putting herself in abusive and harmful situations. As recent [sic] as a few weeks ago, June began drinking again and did not seek appropriate assistance with this ongoing problem. (Petitioner's Exhibit 5.)
During her testimony in court on November 6, 1996, Dina Andrus testified that she is a licensed clinical social worker who specializes in dealing with sexually abused women. She is presently managing June's case. She testified that sexual abuse violates a person's trust in the real world and that June's ability to trust has been greatly impaired, and it has impaired her judgment and her ability to care for herself. She is unable to set personal boundaries. Ms. Andrus believes that while alcohol dependence is a lifelong condition, June appears to be in stable remission. Under cross examination, Ms. Andrus admitted that June is still living with Claude F. who is himself an alcoholic.
While an update to the Social Study was not presented, as recently as July 1995, June went off to a bar with her sister and remained at the bar after her sister left. June did not return home for three days. This was essentially the same type of problem which precipitated DCF intervention three years earlier. Her conduct remained unchanged. CT Page 9989
The psychological reports remain consistent over time. In November 1992, before the child was committed to the Commissioner, a psychological study by Dr. Ralph S. Welsh indicated:
 The patient gave the impression of a flat, detached 27 year old woman who gives the impression of being much less capable than her I.Q. of 83 suggests. In fact, the patient has verbal abstract reasoning ability that is actually above average. The intellectual inefficiency the patient exhibits is clearly the result of a very troubled life . . . and [she] is grappling with an alcohol dependency problem herself. The patient is so detached that she appears retarded which she obviously is not. However the examiner strongly suspects that this is part of an escape mechanism similar to a fugue type state. That is the patient is a very troubled individual who probably needs more intensive psychotherapy. A child placed with the patient at this time would clearly be at risk. (Petitioner's Exhibit 2, p. 5.)
The most recent psychological evaluation by Dr. Anthony F. Campagna, dated four years later, November 1, 1996, shows that June has made some modest gains but concludes:
 Based on the available history and current evaluation results, it is the examiner's opinion that June is not likely to achieve a sufficient degree of rehabilitation within a reasonable period of time so that she can be reunited with her son, Daniel. (Petitioner's Exhibit 4, p. 8.)
 ADJUDICATION
The court finds by clear and convincing evidence that Daniel has previously been adjudicated a neglected child. Since the adjudication of neglect, the mother has failed to achieve such degree of personal rehabilitation as would encourage the belief within a reasonable time considering the age and needs of the child, she could assume a responsible position in the life of the child. General Statute § 17a-112 (b)(2). The court finds this ground to have existed for more than one year.
DISPOSITION
It is not sufficient to find that grounds for termination CT Page 9990 exist. The court must also determine, pursuant to General Statute § 17a-112 (d), as amended, if a termination of parental rights is in the best interest of the child. The court must make this finding by clear and convincing evidence. Practice Book Sec. 1050.1(3). The court will consider the child's best interests based upon the totality of the evidence and the seven mandatory findings.
1) Regarding the nature and timeliness of services offered by the DCF, the court finds that appropriate, timely services were provided by DCF, including counseling and case management, visitation assistance and coordination of alcohol treatment and individual therapy. Those agencies providing the services included Cochran Clinic, Griffin Hospital, Valley Mental Health Services, Lower Naugatuck Valley Council on Drugs and Alcohol, Elmcrest Hospital, Hopewell House and Parent Child Resource Center.
2) Regarding the efforts of reunification pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980, the court finds by clear and convincing evidence that DCF has made reasonable efforts given the circumstances and situation to reunite mother and child. In addition to the vast array of services that were initially offered to June to try to break her of her substance abuse habits and obtain psychiatric treatment, her son was placed with her sister to attempt to keep the child within the family and to make visitation easier for mother. History and experience have shown that June has not been able to rehabilitate herself to the point where she could care for another individual.
3) Regarding court orders, fulfillment of obligations, expectations, service agreements and the like.
DCF, with the approval of the court, set reasonable and realistic expectations. There was only minimal progress with respect to the most important expectations of resolving her mental health issues. Her ability to have successful visits with her child is greatly impaired by June's inability to appropriately relate to her son.
4) Regarding significant emotional ties of the child toward parents, relatives and foster parents.
The social study and psychological report indicates that the CT Page 9991 child continues to be in foster care and appears to be doing very well in that the child is comfortable, happy and well cared for. June appears to genuinely care for her son. The psychological evaluation of June and her son indicate both a parent-child relationship between the two and the presence of positive feelings by Daniel. Unfortunately, the report also indicates that it is not likely that June will ever be able to parent the child. With all the community supports in place, June is marginally able to care for herself. That is not likely to change.
5) Finding regarding the age of the child.
Daniel is five years old. He was born on July 11, 1991. This child requires a stable home where he can be placed, where his needs can be well met with understanding, acceptance and patience.
6) Regarding the parent's efforts to conform her conduct to the best interests of the child considering contact, conduct, communications and contributions, if any. The court finds that the mother has not made efforts to conform her conduct to minimally acceptable parental standards given her state of mental health. As pointed out in the Social Study, "Though tragic, it may be that [June] was so permanently traumatized from the abuse of her father that she may never overcome her present mental health issues." (Petitioner's Exhibit 1, pp. 13-14.)
7) Finding regarding the prevention of the mother from having a meaningful relationship with the child. The court finds that DCF placed Daniel in foster care with June's sister. This fact alone suggests an effort to make access easier for June. The court finds that there was no impediment placed in mother's path.
Further the court is mindful of the overwhelming public policy in favor of requiring parents to financially support their children. In re Bruce R., 234 Conn. 194 (1995). There has been no showing in this case that June has the capacity to pay any adequate child support order.
ORDER
The court having considered all statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights, further finds upon all of the facts and circumstances presented that it is in the child's best CT Page 9992 interest to terminate the parental rights of June J. Accordingly, it is ordered that her parental rights in and to Daniel J. are hereby terminated. It is further ordered that the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement for said child and that the Commissioner shall file with this court no later than 90 days following the date of judgment a written report toward such permanent placement and file such further reports as are required by state and federal law.
FOLEY, J.