IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 20, 2002 Session

## C. J. H. v. A. K. G.

**Appeal from the Juvenile Court for Giles County**
**No. 1356-J     John P. Damron, Judge**

_____

**No. M2001-01234-COA-R3-JV - Filed August 9, 2002**

_____

In this appeal the mother and father of a young child appeal the order of the trial court denying the termination of the father's parental rights. An order establishing the father's paternity had been entered after the child's birth, and the father was ordered to pay child support and granted visitation. While the father has met his monetary obligations, he has not seen his daughter since her birth, or attempted to see her, and has no interest in establishing a relationship with his daughter. The mother and father submitted a joint petition to terminate the father's parental rights, and the trial court denied this petition, finding that termination was not in the best interest of the child. The parties appeal that denial to this court. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and HAMILTON V. GAYDEN, JR., SP. J., joined.

Timothy P. Underwood & Rogers N. Hayes, Pulaski, Tennessee, for the appellants, C.J.H. and A.K.G.

### OPINION

The mother ("Mother") and father ("Father") of a daughter filed a joint petition in the Juvenile Court for Giles County seeking the termination of Father's parental rights. After a hearing on the matter, the court found that termination of Father's parental rights was not in the best interest of the minor child and, therefore, denied the petition. It is from that order that the parties appeal.

I. Facts

Father and Mother did not date for any significant length of time and were never married. After a brief relationship, a daughter was born on July 14, 2000. Father and Mother have had no relationship since their brief affair. After a DNA test was performed proving the paternity of the

child, the parties filed a Joint Petition for Legitimation. The Petition was granted, and Father was ordered to pay child support in the amount of $91.45 per week and to reimburse Mother $66.23 per month for the daughter's health insurance. The court also awarded Father reasonable visitation.

In an affidavit to the court in the proceedings herein Father stated that he had not visited his daughter or had any contact with her since her birth and that he did not desire to establish any parental relationship. Father also said he had "failed to seek reasonable visitation with the minor child in spite of the granting of the same and does not intend to participate in this manner." Further, he stated that the consequences of terminating his parental rights were explained to him and that such termination was in the best interests of his daughter. Father was present at the hearing on the petition, but did not testify.

The only testimony given at the hearing was that of Mother and is summarized in a Statement of the Evidence. Mother testified that the parties were in agreement as to the termination of Father's parental rights and that she understood the impact of the decision. She also testified that she was more than adequately employed to financially care for the child and that she had strong family support to assist her. Mother testified that she had not seen or talked to Father since she was pregnant with the child and that he had never exercised his right to visitation. Further, the extended families on both sides did not get along and Father had since remarried.

The trial court, in its final order, stated it had considered the joint petition, Father's affidavit, Mother's testimony, statements of counsel, and, based on the entire record found "that the termination of Father's parental rights is not in the best interest of the minor child." Accordingly, the trial court ordered that the Joint Petition be denied. The parties are before this court on appeal from that order.

## II. Termination of Rights and Duties

Parents whose rights are terminated become, under the law, "complete strangers" to the child. *O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995). An order terminating parental rights severs all legal rights and obligations of the parent toward the child, Tenn Code Ann. § 36-1-113(*l*)(1). In the usual case coming before an appellate court, a parent facing involuntary termination of parental rights opposes such termination. Therefore, most appellate decisions focus on the rights of the parent.

Under the Tennessee and the United States Constitutions, a parent has a fundamental right to the "custody and upbringing of his or her child." *In re Swanson*, 2 S.W.2d 3d 180, 187 (Tenn. 1999) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972) and *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Consequently, termination of parental rights by a court affects a parent's fundamental constitutional rights. *O'Daniel*, 905 S.W.2d at 186. The rights of a biological father of non-marital children "are entitled to the same constitutional protection as the rights of married parents and divorced custodial parents, as long as the biological father has established a

substantial relationship with the child." *State ex rel. Chilar v. Crawford*, 39 S.W.3d 172, 182 (Tenn. Ct. App. 2000).

Even though a parent's rights are constitutionally protected, they may be terminated, but only using a heightened standard of proof to determine that termination is justified under the statute. *O'Daniel*, 905 S.W.2d at 187; *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). "This heightened standard . . . serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, termination requires proof, by clear and convincing evidence, (1) of the existence of one or more of the statutory grounds and (2) that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Evidence which satisfies the clear and convincing standard "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *O'Daniel*, 905 S.W.2d at 188.

> . . . this Court has held that the Tennessee Constitution provides for a parental right to privacy to care for children without unwarranted state intervention unless there is a substantial danger of harm to the children. This Court has also held that the State and federal constitutions require an unwed biological father's parental rights to be determined before the court may proceed with the issue of adoption. It is therefore beyond question that before a parent's rights can be terminated, there must be a showing that the parent is unfit or that substantial harm to the child will result if parental rights are not terminated.

*Swanson*, 2 S.W.3d at 187-88 (citations and footnotes omitted).

In the case before us, Father does not oppose termination of his parental rights, does not assert any violation of his constitutional rights, and, in fact, has joined with Mother in the trial court and in this court in seeking termination of his rights. Although most cases address the issue of termination from the perspective of the impact on the parent's rights, there is more at stake. An order terminating parental rights also terminates a parent's responsibilities or obligations to the child and eliminates the child's rights toward that parent. Such an order has the effect of:

> severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian. The parent or guardian shall have no further right to notice of proceedings for the adoption of that child by other persons and shall have no right to object to the child's adoption or thereafter to have any relationship, legal or otherwise, with the child. It shall terminate the responsibilities of that parent or guardian under this section for future child support or other future financial responsibilities even if the child is not ultimately adopted; . . . .

Tenn. Code Ann. § 36-1-113(*l*)(1).[1]

The impact of a termination order upon a child is appropriately considered in the requirement that, in addition to the existence of grounds, there must be a determination of that termination is in the child's best interest. Because termination requires both grounds and best interest, it cannot be presumed that the existence of grounds necessarily leads to the conclusion that termination is warranted. Termination of a person's constitutionally-protected rights to parent a child requires an individualized consideration based on the facts of a particular situation, including an individualized determination of a child's best interest.

In the case before us, the trial court denied termination because it found that it was not in the child's best interests. We must review the trial court's findings in accordance with Tenn. R. App. P. 13(d). The review is *de novo*, with a presumption of correctness for the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Then, we must determine whether the facts make out a clear and convincing case in favor of termination. *In re Drinnon*, 776 S.W.2d at 97. The trial court herein made no underlying findings of fact, merely concluding that termination was not in the child's best interests.

## II. A Child's Best Interest and the Parent's Duty to Support

As Tenn. Code Ann. § 36-1-113(*l*)(1), quoted above, makes clear, one specific and important parental duty eliminated by a termination order is the parent's duty to support his or her child. A termination order also extinguishes the child's right to such support. Absent such an order, every parent is obligated to support his or her child during the child's minority. Tenn. Code Ann. § 34-11-102. The obligations of parents to support, care for and nurture their children are joint, and the extent of their duty to support depends on their ability to provide that support. *State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 600-601 (Tenn. Ct. App. 1997). Relevant statutes and regulations governing child support are intended "to assure that children receive support reasonably consistent with their parent or parents' financial resources." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000). In the situation of unmarried parents:

> Our paternity and child support statutes and the Child Support Guidelines evince a policy that children should be supported by their fathers. The paternity statutes provide a process by which the putative father can be identified. Once identified, the father is required to furnish support and education for the child.

*Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000) (footnote omitted). It is clear that both state and federal policy seek to ensure that all parents support their children and that children benefit from

---

[1] Pursuant to Tenn. Code Ann. § 37-1-147(c), an order of termination entered by a juvenile court has the same effect as set out in Tenn. Code Ann. § 36-1-113.

enforceable orders of support, as evidenced by the many pieces of legislation designed to enhance enforcement efforts.

Because Tennessee has a strong policy that parents will support their children, the Tennessee Supreme Court has held that private agreements between parents which circumvent the support obligations established by law contravene public policy. *Berryhill*, 21 S.W.3d at 192. In *Berryhill*, the Court observed that courts in several jurisdictions had similarly held that "a child's right to support cannot be bargained away by a parent to the child's detriment." *Id.* at 191. Finding those holdings persuasive, the Court held that a private agreement between parents which attempts to eliminate or reduce a child's right to support is void because it violates public policy. *Id.*; *see also Witt v. Witt*, 929 S.W.2d 360 (Tenn. Ct. App. 1996). Consequently, our courts will not enforce any such agreement.

Courts in other states have viewed attempts to voluntarily surrender parental rights and joint attempts to terminate rights in the same way they have viewed agreements to eliminate child support. When so viewed, courts have found that parents cannot use the termination procedure or statutes to avoid their obligation of child support because it would be against public policy. In *In re Bruce R.*, 662 A.2d 107, 211-12 (Conn. 1995), the Supreme Court of Connecticut, after a thorough review, concluded that "courts of our sister states universally have held that parents may not voluntarily terminate their parental rights simply to avoid their responsibility to support their children." *Id.* at 116 (citing cases from a number of other states). In considering the practical result of allowing a voluntary termination of rights to eliminate the duty to support, one court stated:

> Clearly, if [parent] is successful in this case, he will have created a simple vehicle for the avoidance of support obligation by a parent in [Pennsylvania]. We cannot find that the Legislature intended to create such a vehicle in its passage of the Adoption Act. We have consistently held that a child's entitlement to support is a right that arises from the parent-child status; it is not a property right, and cannot be "bargained away" by contract. It is clear that the Adoption Act was not designed to permit a parent to avoid a support obligation by the mere filing of a petition to terminate parental rights, any more than a parent is permitted to "bargain away" the obligation by any other means.

*Commonwealth ex rel. Hager v. Woolf*, 419 A.2d 535, 538 (Pa. Super. Ct.1980) (citations omitted).[2]

---

[2]In *Woolf*, the father had voluntarily relinquished custody of one of his children to an agency who intended to move for termination of the mother's parental rights and have the child adopted. That plan was halted when the mother removed the child from his foster home. The state public assistance agency sought to have the father pay support for the child, and the father defended on the basis he had voluntarily relinquished his parental rights and was consequently relieved of any duty to support. The court rejected the father's statutory construction argument, as well as finding his position contrary to public policy.

Similarly, the Supreme Court of Iowa rejected a father's argument that his parental rights must be terminated because he proved the existence of the statutory ground of abandonment by testifying he had no regard for his biological son and intended to show no interest in him. The father unsuccessfully argued that proof of grounds required termination and that no separate determination of the child's best interests should be made. After holding that, in fact, the best interests of the child are paramount in a termination decision, the court also considered the public policy implications, stating:

> Acceptance of [the father's] argument ultimately would open a hatch for a parent to escape his or her duty to support a child. We cannot be persuaded that the legislature intended [the statute] to alter so radically the parental support obligation. Our determination is reinforced by decisions from other jurisdictions holding a parent may not voluntarily avoid a duty to support his or her child.

*In re D.W.K.*, 365 N.W.2d 32, 34-35 (Iowa 1985) (citations omitted).

The Alabama Supreme Court has addressed the issue of "whether a parent's child support obligations may be waived by a joint petition for termination of parental rights," in a case where the mother sought termination of her ex-husband's parental rights in order to avoid future disagreements or a custody conflict and testified the father had shown little interest in his son. The father testified he disagreed with his former wife over child-rearing, but that he had no interest in visiting his son and agreed the child's best interests would be served by a termination of his parental rights. The child's guardian ad litem opposed termination as contrary to public policy and contrary to legislative intent when no adoption is contemplated. In deciding the issue based on the best interest of the child test, the court held:

> No evidence was produced at trial, and no argument has been made, that [the father] has harmed or has in any way interfered with [the mother's] custody of the child. Termination of the father's parental rights in this case would seem to us to be an unnecessarily drastic action not supported by clear and convincing evidence. Although we agree that [the father's] conduct toward his son may satisfy the [statutory] criteria . . . constituting "abandonment," termination of his parental rights appears to be overwhelmingly for the convenience of the parents. By mutual consent, [the mother and the father] seek to waive [the child's] right to receive support from his father although the child would receive nothing in return.
>
> . . . .
>
> Even if [the father] chooses not to establish contact with his son, the son's right to receive support from his father remains. The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through termination of

parental rights. The courts of this state will not be used in the furtherance of such a purpose.

*Ex parte Brooks*, 513 So. 2d 614, 617 (Ala. 1987), *overruled on other grounds by Ex parte Beasley*, 564 So. 2d 950 (Ala. 1990). Consequently, the court determined the child's best interests, particularly his right to support, would not be protected by termination of the father's parental rights.

Similarly, the Utah Court of Appeals has held that an adoptive father could not voluntarily terminate his parental rights because it was not in the best interests of the child.

Courts in other states have held that parents may not voluntarily terminate their parental rights simply to avoid their responsibility to support their children. "Surely the legislature did not intend that [the statute] be used as a means for a parent to avoid the obligation to support his or her children." Unlike an adoption case where a parent waives his or her parental rights to a child in order that another may assume those rights and obligations, this is a case where allowing the adoptive father to voluntarily terminate his right and obligations would leave R.N.J with only one legal parent.

*In re R.N.J.*, 908 P.2d 345, 351-52 (Utah Ct. App. 1995) (citations and footnotes omitted) (citing cases from other states in n.2).

We find persuasive these holdings and the reasoning that supports them. They reflect principles underlying Tennessee's public policy and its law on termination of parental rights. Whether the basis for the decision lies in the well-established public policy ensuring support to children or in an analysis of the child's best interest in a particular situation, these holdings provide appropriate guidance in weighing all the relevant factors, including the impact of the loss of future support.

While all terminations involve extinction of the duty to support, the consequence to the child of the loss of the support must be weighed against the benefits to the child of the termination in the overall context of the child's best interest. Orders terminating parental rights are entered and upheld in spite of the loss of support where other interests are more significant. For example, because termination is justified where substantial harm to the child will result otherwise, *Swanson*, 2 S.W.3d at 188, the best interest of the child in avoiding such harm may overcome the loss of support. Similarly, in another common situation, termination of parental rights is the prerequisite to adoption, or availability for adoption, and, therefore, to the child's opportunity to be integrated into a stable and nurturing environment. In addition to these most significant benefits to the child, an adoptive parent undertakes parental responsibilities, including the duty to support. Tenn. Code Ann. § 36-1-121 (stating that adoption establishes the relationship of parent and child for all legal consequences and incidents of the biological relationship of parent and child); *O'Daniel*, 905 S.W.2d at 186 (holding that adoptive parents acquire all parental rights and responsibilities).

Consequently, we agree that "legislative and judicial efforts to hold parents to their financial responsibility to support their children would be eviscerated if we were to allow an unfettered legal avenue through which a parent *without regard to the best interest of the child* could avoid all responsibility for future support." *In Re Bruce R.*, 662 A.2d at 117 (emphasis added). We also agree that child support policy "must not be undermined by allowing absent fathers to get out of paying child support by voluntarily terminating their parental rights, *in the absence of it being in the best interests of the child.*" Khristine Ann Heisinger, Note, *Child Support Properly a Factor in Determining the Best Interests of Child in Voluntary Termination of Parental Rights*," 58 MO. L. REV. 969, 987 (1993) (emphasis added.)

We hold that the loss of a child's right to future support from a parent is an appropriate factor to consider in determining whether termination of that parent's parental rights is in the child's best interest. It must be weighed, along with all other relevant factors, in making that determination.[3]

## III. Statutory Policy on Voluntary Termination

Like many of the courts quoted above, we find no basis for concluding that our legislature intended that the termination of parental rights statute, Tenn. Code Ann. § 36-1-113, which is part of our adoption laws, be used to avoid the parental responsibility of support which is so strongly enforced by other provisions. Although our statutes allow, in some circumstances, for a voluntary surrender of parental rights, and its concomitant duty to support, those circumstances appear to be present only in the context of an adoption. A surrender, a confirmed parental consent, or a waiver of interest executed in accordance with law has the effect of terminating the parent's rights. Tenn. Code Ann. § 36-1-111(r)(1)(A). However, there is no statutory authority for use of these procedures outside the context of an adoption or a plan for an adoption.

"Surrender" means a document executed under the provisions of § 36-1-111 or under the law of another state or territory or country, by the parent or guardian of a child, by which that parent or guardian relinquishes all parental or guardianship right of that parent or guardian to a child, to another person or public child care agency or licensed child-placing agency *for the purposes of making that child available for adoption*. Tenn. Code Ann. § 36-1-102(47) (emphasis added). Similarly, according to Tenn. Code Ann. § 36-1-102(15), "Consent" means:

> (B) the written permission of a parent pursuant to § 36-1-117(f) to permit the adoption of that parent's child by that parent's relative or by the parent's spouse who is the child's stepparent;

---

[3]Our legislature has listed some, but not all, of the factors a court is to consider when determining whether termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(i). Included in that list is whether the parent has paid child support. Tenn. Code Ann. § 36-1-113(i)(9).

(C) The process as described in § 36-1-117(g) by which a parent co-signs an adoption petition, with the prospective adoptive parents, for the purpose of making the child available for adoption by the co-petitioning prospective adoptive parent, and which permits the court to enter an order of guardianship to give the adoptive parents custody and supervision of the child pending the completion or dismissal of the adoption proceedings or pending revocation of the consent by the parent. This process shall be called a "parental consent."

A surrender or parental consent may only be made or given to a prospective adoptive parent, the department of children's services, or a licenced child-placing agency. Tenn. Code Ann. § 36-1-111(c).

Finally, a waiver of interest is available only before paternity has been established, and allows a putative father to waive any parental rights he might have. Tenn. Code Ann. §§ 36-1-111(w) and 36-2-318.[4] The waiver obviates the need to give notice to the putative father of any adoption or custody proceedings. However, a final order of adoption is required, in conjunction with the waiver, to terminate the alleged biological father's rights. Tenn. Code Ann. § 36-1-111 (w)(2)(A). If a final order of adoption is not entered, a parentage action may be initiated, and the biological father's obligation for support may be imposed. Tenn. Code Ann. § 36-1-111(w)(2)(B). A waiver of interest is not available for use by a person who has been adjudicated the legal father of a child. Tenn. Code Ann. § 36-1-111(w)(3).

Thus, none of the statutory procedures for relinquishment of parental rights would be available to Father in the case before us. No adoption is contemplated.[5] We are aware, of course, that Father did not unilaterally seek to terminate his parental rights. He and Mother agreed to pursue

---

[4] The waiver is sufficient if it contains a statement waiving any rights and including language similar to the following:

> I . . . understand that the mother has placed or wishes to place this child for adoption or that the child is the subject of legal proceedings leading to the child's adoption or leading to a determination of the child's legal custody or guardianship. I am not necessarily admitting or saying that I am the father of this child, but if I am, I do not wish to provide care for this child, and I feel it would be in the child's best interest for this adoption to occur, or for other custody or guardianship proceedings to occur in the child's best interests.

Tenn. Code Ann. § 36-1-111(w)(5).

[5] In a concurring opinion in *Sorrells v. Sorrells*, No. E1999-01658-COA-R3-CV, 2000 Tenn. App. LEXIS 675 (Tenn. Ct. App. Oct. 5, 2000) (no Tenn. R. App. P. 11 application filed), one member of this court pointed out that a mother who was not attempting to facilitate an adoption through the termination proceeding lacked standing to seek termination of her former husband's parental rights on the basis of Tenn. Code Ann. § 36-1-113(b), which identifies those persons with standing to bring a petition for termination of parental rights as "prospective adoptive parent(s) of the child, any licensed childplacing agency having custody of the child, the child's guardian ad litem, a court appointed special advocate (CASA) agency, or the department [of children's services]."

termination jointly. One effect of that agreement, if approved by the courts, would be to waive the child's right to support from her father. *Ex Parte Brooks*, 513 So.2d at 617. Just as a child's right to support cannot be bargained away by a parent to the detriment of the child, *Berryhill*, 21 S.W.3d at 191-92, parents cannot agree to terminate parental rights if such termination is not in the best interest of the child. An action to terminate parental rights in this situation is subject to the same statutory requirements as one that is opposed: proof by clear and convincing evidence that grounds exist and that the child's best interests are served by the termination.[6] It is the duty of the courts to examine the entire set of circumstances and make those determinations.

## IV. Conclusion

In the case before us, the evidence does not preponderate against the trial court's finding that termination is not in the child's best interests. We find no factor which outweighs the loss the right to support in determining the child's best interests. There is no proof in the record that Father has interfered with Mother's custody or rearing of their child. There is no proof, certainly none meeting the clear and convincing standard, that the child will be substantially harmed if termination is not granted. While Mother might genuinely seek to avoid future interference by Father and possible interfamilial conflicts, the Mother's interests are not determinative. Mother might genuinely believe her child's interests are served by elimination of a disinterested Father from any potential future involvement in the child's life and the potential emotional upheavals that might bring. However, the record does not support a finding that there is substantial risk of such occurrences. Mother currently might also be able to support the child without assistance from Father. However, a child is entitled to support from both parents, and no one can ensure Mother's continued ability to provide full support.

We affirm the decision of the trial court denying termination of parental rights. Costs are assessed to the appellants.

---

[6]We are aware that this court has reached an apparently opposite conclusion in at least one other case. In *Rainey v. Head*, No. W2000-005-4-COA-R3-CV, 2001 Tenn. App. LEXIS 190 (Tenn. Ct. App. Mar. 20, 2001) (no Tenn. R. App. P. 11 application filed), the mother of a child born out of wedlock filed a petition to terminate the parental rights of the child's father, and no adoption was involved. The father signed a consent order terminating his rights, which was entered by the court. The father later attempted to have that order set aside and asserted, in part, that the trial court was required to find, by clear and convincing evidence, that grounds for termination exist and that the termination was in the child's best interest. This court held that because the father had entered into a consent order, "it was thus unnecessary for the trial court to make findings of fact and conclusions of law as to whether [the father's] parental rights should be terminated." Although the court noted that the trial court had appointed a guardian ad litem who found that termination was in the child's best interest, it reaffirmed that the consent of the father eliminated the need for the court to make the necessary statutory findings. We simply disagree. *See Castleman v. Castleman*, No. M2000-00270-COA-R3-CV, 2000 Tenn. App. LEXIS 820 (Tenn. Ct. App. Dec. 21, 2000) (no Tenn. R. App. P. 11 application filed) (holding that a default judgment without taking evidence is inappropriate when court is required to award custody on the basis of the child's best interest).

_____
PATRICIA J. COTTRELL, JUDGE